246 So.2d 778 (1971)
Elva Anne PACHECO, Appellant,
v.
Ferdie PACHECO, Appellee.
No. 39021.
Supreme Court of Florida.
April 7, 1971.
*779 Daniel Neal Heller, Miami, for appellant.
Alan R. Schwartz of Horton & Schwartz and Rose & Marlow, Miami, for appellee.
THORNAL, Justice.
By appeal we review a final decree of divorce and related relief whereby a chancellor passed directly on the validity of a state statute. Fla. Const. art. V, § 4(2) (1968), F.S.A.
We must consider the validity of Fla. Stat. § 61.08 (1967), F.S.A. preliminary to our consideration of the final decree which awarded a divorce, child custody and occupancy of the family home to a husband because of the wife's adultery and at the same time denied her request for alimony in view of the provisions of the cited statute.
Appellee Ferdie Pacheco, a medical doctor, sought a divorce from appellant Elva Anne Pacheco on the ground of adultery. The chancellor granted the divorce to the husband because of the adultery of the wife. He denied the wife's counterclaim for divorce on the same ground. Custody of three children, two daughters aged 14 and 10, and a son, 6, was awarded the plaintiff father, who also was granted occupancy of the jointly-owned home of the parties. The father was ordered to pay the mother $500 per month for use of her interest in the home. The wife's claim for alimony was denied. Pending appeal but on his own motion the chancellor stayed that portion of the decree which awarded child custody and occupancy of the home to the father. Mrs. Pacheco attacked the validity of Fla. Stat. § 61.08 (1967), F.S.A. which denies alimony to an adulterous wife. She claims that the 1828 statute has become unreasonable, arbitrary and discriminatory when measured by present day standards. She contends that singling out an adulterous wife is unjust and violates due process and equal protection clauses of the Federal and Florida Constitutions. The chancellor upheld the validity of the statute. The appeal comes directly to this Court under Fla. Const. art. V § 4(2).
Appellant seeks reversal because of the decree sustaining the statute and because of alleged errors in granting the divorce to her husband, and in awarding to him permanent custody of the children and occupancy of the home.
We consider first the claim that Fla. Stat. § 61.08 (1967), F.S.A. is unconstitututional. The cited statute reads:
"Alimony On Judgment Of Divorce.  In every judgment of divorce in an action by the wife, the court shall make such orders about maintenance, alimony and suit money of the wife, or any allowance to be made to her, and if any, the security to be given therefor, as from the circumstances of the parties and nature of the case is equitable; but no alimony shall be granted to an adulterous wife. In any award of permanent alimony the court has jurisdiction to order periodic payments or payment in lump sum or both." (emphasis added)
It would be well to bear in mind that we are not confronted by potential problems that could or might arise out of the statute but which are not presented by the case sub judice. For example, we are not faced with the claim of a needy husband that he is denied equal protection because the statute does not authorize alimony awards to husbands. This is a problem which some day may become a challenge to advocates of total equality between women and men. It is not an issue in this record.
*780 The appellant levels a broadside against the statute on the basic ground that "times have drastically changed" since the statute was enacted. She says that there is no longer any reason "to single out adultery." She urges "that adultery today seems, regrettably, to be occurring with greater frequency". To support this we are referred to Kinsey, Sexual Behavior in the Human Female, 1953, pp. 409-445. To support the claimed discrimination against adultery appellant then suggests that "The chasteness of women entering marriage today seems seldom required or expected." To support this we are referred to Kinsey, Sexual Behavior in the Human Male, 1948, p. 364.
The sum of appellant's claim is that we have now become a sexually and morally permissive society; that this new morality has obliterated old standards, and, in short, that we have become immersed by a changing culture that surrounds us. Hence, insists appellant, the Legislature has been stripped of its police power to categorize various types of marital offenses for different treatment. The Kinsey references which by no means have been accepted as compelling authority, are the primary reliance of appellant. We have read the excerpts from Dr. Kinsey which are appended to the briefs. The author there compiles statistics which are supposedly based on studies of human conduct, as well as the behavior of some of our mammalian contemporaries and primates such as sea lions, elephants, horses, monkeys and apes. Actually the cited references do not bear out any claim of a changed social order that compels a change in the law. In fact, they recognize the socially disruptive effect of these extra-marital activities which tend to destroy the stability of family life, generate divided loyalties, and ignore the lessons of history which teach that our western civilization particularly has been constructed on the monogamous pattern of marriage. So much for the sexual behavior habits of man, baboon and rhesus monkeys. We find in them no justification for denying to the Florida Legislature a proper exercise of its police power in an area as sensitive as the divorce laws.
At common law there was no right to alimony at all. Divorce was not a function of the judiciary. Winstone v. Winstone (1861) 2 Swabey & T. 246, 164 English Reprint 989.
American law revised and imported the practice of granting alimony as an incident to divorce from the English ecclesiastical law as it existed until the reform of the English Court system in 1857. (See Clark, The Law of Domestic Relations in the United States. § 14 (1968).) Under this Church law, marriage was a Holy Sacrament and could not be dissolved. It was therefore the practice to grant only divorces a mensa et thoro, authorizing the husband and wife to live apart but retaining the marriage bond. Vernier and Hurlbut, The Historical Background of Alimony Law and Its Present Statutory Structure, 9 Law and Contemporary Problems 197 (1939). In this context, which we today call a "legal separation," the husband still had a wife to whom he owed a duty of support. Wilson v. Wilson, 3 Hagg, Ecc. 329, 162 Eng.Rep. 1175 (1830). But since divorce in the ecclesiastical courts was actually only a separation, alimony as we know it was non-existent. Any money the wife got represented the support owed her by virtue of the continuance of the marriage.
For the dissolution of a valid marriage, or divorce a vinculo matrimonii, resort was had to absolute divorce which was granted only by private acts of Parliament. Vernier and Hurlbut, supra, at p. 198. Unless the act granting the divorce contained a provision for alimony, there was none. See Clark, supra. Thus it is that there was no common-law power in the courts to grant alimony. It is a creature of statute when sought as an incident to divorce a vinculo. Nolen v. Nolen, 121 Fla. 130, 163 So. 401 (1935).
When Fla. Stat. § 2.01, F.S.A. adopted the English common law down to July 4, *781 1776, it adopted this state of the law prior to the 1857 reform act. Until 1857, Ecclesiastical courts had complete control over judicial divorce, and a valid marriage was indissoluble except with the aid of Parliament. Holdsworth, A History of the English Law (1903) p. 390; 2 Bishop, Marriage, Divorce and Separation § 851 (1891). Thus, outside of a statutory enactment, only divorce a mensa et thoro existed at common law, with its parallel award of support money.
In addition to other factors, the English courts took fault into consideration when setting the amount of support to be paid. Where the wife was at fault she was entitled to nothing. 1 Blackstone, Commentaries, Bk. I, ch. 15, p. 189 (Gavit ed. 1941). Ecclesiastical courts would never award alimony upon divorce a mensa et thoro to an adulterous wife, for there was no duty for a husband to support an adulterous wife. See, Johnson, Family Law, ch. 8 p. 188 (2nd ed. 1965), Woodward v. Dowse (1861) 10 C.B. (N.S.) 722; Hartley v. Hartley [1955] 1 W.L.R. 384.
In enacting Fla. Stat. § 61.08, F.S.A. The Florida Legislature repealed those common law disabilities of the wife who was at fault, with the one exception of adultery. In all other cases the matter rests in the discretion of the chancellor. This was our holding in Kahn v. Kahn, 78 So.2d 367 (Fla. 1955), which denied alimony to a wife capable of supporting herself.
We are not here confronted by a statutory deprivation of a common law right. The so-called "right" to alimony does not exist as an incident to divorce a vinculo unless it is granted by statute. The Florida Legislature has simply decided that the benefit of alimony shall not be available to an adulterous wife, just as it has declined to allow alimony to husbands except in cases of insanity.
To avoid infringement of constitutional rights and liberties the exercise of a state's police powers must be confined to those acts which may reasonably be construed as expedient for the protection of the public safety, welfare and health or morals. Eelbeck Milling Co. v. Mayo, 86 So.2d 438 (Fla. 1956); Larson v. Lesser, 106 So.2d 188 (Fla. 1958); Zabel v. Pinellas County Water and Nav. Control Authority, 171 So.2d 376 (Fla. 1965). However, the law-making authority may, under its police power, enact regulations that are not allembracing. It may legislate with reference to degrees of evil and to situations in which the evil is demonstrably more harmful, without denying equal protection of the law. Beasley v. Cahoon, 109 Fla. 106, 147 So. 288 (Fla. 1933). There is no merit to appellant's contention that equal protection is violated when one evil is attacked more severely than others. This is the very essence of the Legislature's policymaking function. An exercise of the police power thus need not apply equally and uniformly to all evils in the state. It is sufficient to satisfy the constitutional requirement of equal protection if the statute applies equally and uniformly to all persons similarly conditioned. Atlantic Coast Line R. Co. v. Coachman, 59 Fla. 130, 52 So. 377 (1910); Davis v. Florida Power Co., 64 Fla. 246, 60 So. 759 (1913).
Where a regulation affects alike all similarly situated with reference to the subject to be regulated, a wide discretion is accorded the Legislature in selecting the subjects for legislative action. King Lumber & Mfg. Co. v. Atlantic Coast Line R. Co., 58 Fla. 292, 50 So. 509 (1909); McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). As heretofore noted, even Dr. Kinsey, the authority relied upon heavily by appellant, concedes the peculiar propensities of adultery as a source of domestic discord, family disruption and social scorn. He seems to agree that these are results which are particularly products of the conduct of an adulterous wife and mother. It is also worthy to note that of the ten grounds for divorce in Florida adultery is one which is also declared to be a violation of the criminal laws. Moreover, it is the one basis for divorce which *782 is recognized as such by all fifty states, assuming that California so regards it under its recently liberalized divorce laws. No other breach of the marital contract has received such universal condemnation. These are merely added aspects of the offense which support special legislative treatment and contribute additional justification for the decree sustaining the subject statute.
We therefore find that § 61.08, is a valid exercise of the State's police power and does not contravene constitutional assurances of due process and equal protection.
As to the claimed insufficiency of proof of adultery, we have examined the record and find that it supports the decree of the chancellor. It is unnecessary to detail the evidence and attempt to evaluate the various inferences which it supports.
To prove adultery the law does not require that specific acts be attested by eye-witnesses. The rule is that if the circumstances proven are such as to lead the guarded discretion of a reasonable and just man to the guilt of the participants, it is sufficient. McMillan v. McMillan, 120 Fla. 209, 162 So. 524 (1935); Heath v. Heath, 103 Fla. 1071, 138 So. 796 (1932); Blue v. Blue, 66 So.2d 228 (Fla. 1953). The evidence in the instant matter meets the required standard.
The award of custody of the three children to the appellee father is also challenged. Again we are led to a search of the record to ascertain whether the evidence is sufficient to support the chancellor's decree. As we have stated many times, the welfare of the child is the primary determinative element in deciding custody. A broad discretion is allowed a chancellor whose judgment will not be disturbed unless an abuse of discretion is made to appear. Green v. Green, 137 Fla. 359, 188 So. 355 (1930); Evans v. Evans, 70 So.2d 506 (Fla. 1954).
At this point we are not inclined to disturb the finding regarding custody of the children and occupancy of the home. However, we have observed that the chancellor sua sponte left the children with the mother in the family home pending this appeal. This, therefore, is somewhat inconsistent with a finding that the welfare of the children required the award of permanent custody to the father. While we affirm the decree of the chancellor on the matter of custody we do so without prejudice to the right of appellant to seek a reevaluation of the pertinent portions of the record in the light of any facts or inferences related to the welfare of the children and occupancy of the house which might have developed since the entry of the decree.
On the final point, the chancellor committed no error in denying appellant's claim to an interest in appellee's property and business.
The decree is affirmed but without prejudice to appellant's right regarding child custody and home occupancy noted above.
It is so ordered.
ROBERTS, Justice (dissenting).
This matter is before us for the first appellate review since the District Court of Appeal was by-passed because of the constitutional question involved. The Chancellor below did not favor us with a finding of facts, but only his conclusions, so it is impossible to discern on what basis he deprived the wife of her equitable interest in the accumulated wealth of her husband, which interest was not forfeited by her infidelity. See Heath v. Heath, 103 Fla. 1071, 138 So. 796, 797. A similar ruling is expressed in Foreman v. Foreman, Fla., 40 So.2d 560.
The unconditional denial of alimony to an adulterous wife provided in Section 61.08 Florida Statutes, F.S.A. is a civil penalty and forfeiture imposed in addition to that provided in the criminal code. When construed *783 literally it simply means that an errant husband can commit years of physical and mental abuse and torture of any or every kind, even to the point of disrupting the marriage and impairing the health of the wife, but if he can prove that in a moment of indignation or for any other cause she has committed a single act of adultery, he stands legally excused of his derelictions, escapes all the consequences and goes free of any financial obligation to her. This harsh provision was written into our law in 1828  when women had indeed few legal rights and from a legal standpoint had little more status than a mere chattel. Certainly civilization has come far enough during the intervening 142 years to warrant a re-examination.
The cases are many in this jurisdiction holding that where circumstances so warrant or require, courts of equity can relieve against penalties and forfeitures. Without condoning the derelictions of the wife here presented, the whole evidence should be examined to determine if there is sufficient misconduct on the part of the husband to induce a Chancellor to relieve against the penalty and forfeiture above referred to, and make appropriate provision for the needs of the wife, but limited by the rule regarding alimony announced in Kahn v. Kahn, (Fla.), 78 So.2d 367.
On the record here presented, I would reverse the decision under review and remand with directions to make a finding of facts concerning the equitable interests of the wife in the accumulated wealth of her husband and the extent of her contributions in money, effort and service and to determine whether or not equity should relieve against the penalty and forfeiture of alimony.
On the state of the record and particularly the vagueness of the final decree on the facts, I cannot agree to a judgment that would deprive the wife of her equitable interest in the accumulated wealth of the husband and the custody of her children and all financial benefits.
I therefore respectfully dissent.
ERVIN, Chief Justice, dissenting:
It appears to me that F.S. section 61.08, F.S.A., is unconstitutional insofar as it singles out all adulterous wives, as such, to be denied alimony no matter what the circumstances of the particular divorce case may be or what the economic needs of the divorced wife may be. For examples, the husband's misconduct, the degree of the wife's adulterous conduct, any inducement or condonation of it by the husband, the wife's condition of health and her ability to earn a livelihood, the wife's contribution to her husband's wealth all appear to be immaterial in any divorce case insofar as the statutory prohibition is concerned.
The statute requires the trial court in every judgment of divorce to make appropriate orders relating to the economic considerations involved in the separation of the parties, including alimony, as appears equitable from "the circumstances of the parties and the nature of the case," except no alimony shall be granted an adulterous wife. This latter exception seems on its face to be discriminatory and unreasonably punitive to a class of citizens and amounts to an unlawful legislative restraint on judicial discretion in equitably determining the material and economic interests and needs of the parties pursuant to the particular circumstances of the case.
In support of my position, I refer to general principles of law which denounce legislative discrimination among citizens as stated in: Davis v. Florida Power Co., Fla. 1913, 64 Fla. 246, 60 So. 759; Georgia Southern & Florida Ry. Co. v. Seven-Up Bott. Co., Fla. 1965, 175 So.2d 39; Levy v. Louisiana, 1968, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436; and Smith v. King, 277 F. Supp. 31 (D.C.Ala. 1967), affirmed 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).
*784 I could indulge myself in a long and disputatious dissent. However, I think it is enough to say that if alimony may be granted pursuant to statute to all wives that are divorced from their husbands except to adulterous ones for the sole reason of their having such status regardless of any extenuating circumstances, such exception is constitutionally impermissible.
All of the principles of constitutional equal protection enunciated in the cited cases are applicable to this situation. Accordingly, I do not believe it is constitutionally permissible for our Florida statute to sanctimoniously "cast the first stone" in the unequal manner provided and preclude at the threshhold any consideration of alimony for an adulterous wife, regardless of the circumstances of the particular case. I thought when we decided Georgia Southern & Florida Ry. Co. v. Seven-Up Bott. Co., supra, Florida law would thereafter become more amenable to progressive principles against unequal treatment of citizens as seemed to be indicated therein. In retrospect today, I am not quite so sanguine.

ON REHEARING GRANTED
PER CURIAM:
The foregoing opinion and judgment by THORNAL, J., prepared and filed prior to his death is hereby adopted, on rehearing granted, as the opinion and judgment of this Court.
It is so ordered.
CARLTON, ADKINS, BOYD, McCAIN and DEKLE, JJ., concur.
ROBERTS, C.J., dissents for the reasons stated in my original dissenting opinion.
ERVIN, J., dissents for the reasons stated in my original dissenting opinion and concurs with ROBERTS, C.J.