342 So.2d 962 (1977)
John Roger LAIRD and Lorraine A. Coffey, Appellants,
v.
STATE of Florida, Appellee.
No. 48889.
Supreme Court of Florida.
February 10, 1977.
Richard L. Jorandby, Public Defender, and Craig S. Barnard, Asst. Public Defender, for appellants.
Robert L. Shevin, Atty. Gen., and Marsha G. Madorsky, Asst. Atty. Gen., for appellee.
SUNDBERG, Justice.
This is an appeal from a judgment entered in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County. We have jurisdiction under Article V, Section 3(b)(1), Florida Constitution.
Appellants John Laird and Lorraine Coffey were charged by information with one count of possession of cannabis in excess of five grams and one count of possessing paraphernalia. After pleading not guilty, appellants filed a motion to dismiss the information on the grounds that Section 893.13(1)(e), Florida Statutes, and related portions of Chapter 893, proscribing possession of marijuana, are unconstitutional as violative of the right to privacy. Appellants urged that the statutory provision, by including the private, noncommercial possession and/or use of marijuana in a private home, did not bear a substantial relationship to a proper governmental purpose.
After denial of their motion to dismiss, appellants moved to withdraw their pleas of not guilty and enter pleas of nolo contendere to the possession count, while reserving the right to appeal the denial of the motion to dismiss. Appellant Laird admitted having the marijuana in his apartment on the day in question, and appellant Coffey admitted being present at the apartment. The trial court accepted appellants' pleas, withheld adjudication, and placed Laird and Coffey on two and one-half years' probation. The State entered a nolle prosequi as to the paraphernalia possession charge.
Notice of appeal to the District Court of Appeal, Fourth District, was timely filed, but on appellants' motion, the cause was transferred to this Court by order of the District Court dated February 4, 1976.
Appellants see this case  which raises the narrow issue of whether the State can prohibit private possession of marijuana in the home  as a clash between a basic constitutional right to privacy and the State's police power. It is urged upon us that appellants enjoy the constitutional right to smoke marijuana in the privacy of Laird's domicile. The reasoning of cases such as Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), is said to be applicable to the instant controversy. Appellants argue that a decision of the Supreme Court of *963 Alaska, Ravin v. State, 537 P.2d 494 (Alaska 1975), provides persuasive authority for the position which they advance.
For the reasons discussed herein we are unable to accept appellants' contention. We reject the notion that smoking marijuana at home is the type of conduct protected by the constitutional right to privacy and, on this record, affirm the trial court.
In Griswold v. Connecticut, supra, the United States Supreme Court determined that a Connecticut statute which made the use of contraceptives a criminal offense was invalid as an unconstitutional invasion of the right to privacy of married persons. Mr. Justice Douglas, writing for the majority, found "that specific guarantees in the Bill of Rights have penumbras, formed by emanations from those guarantees that help give them life and substance." 381 U.S. at 484, 85 S.Ct. at 1681. The marital relationship was held to lie "within the zone of privacy created by several fundamental guarantees." Id. at 485, 85 S.Ct. at 1682. Justice Douglas placed heavy emphasis upon the marital relationship of the Griswold parties:
"We deal with a right of privacy older than the Bill of Rights  older than our political parties, older than our school systems. Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred." Id. at 486, 85 S.Ct. at 1682.
Griswold's protection of the privacy of the marital relationship was extended to certain intimate aspects of the lives of single persons as well in Eisenstadt v. Baird, supra, and Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Eisenstadt invalidated a Massachusetts statute which made it a crime to sell, lend, or give away any contraceptive drug, medicine, instrument, or article. The statute permitted physicians to administer or prescribe contraceptive drugs or articles for married persons and allowed pharmacists to fill prescriptions for such items for married persons. The Court determined that the Massachusetts law could be upheld neither as a deterrent to fornication nor as a health measure nor as a prohibition on contraception. The third justification was dismissed on privacy grounds:
If under Griswold the distribution of contraceptives to married persons cannot be prohibited, a ban on distribution to unmarried persons would be equally impermissible. It is true that in Griswold the right of privacy in question inhered in the marital relationship. Yet the marital couple is not an independent entity with a mind and heart of its own, but an association of two individuals each with a separate intellectual and emotional makeup. If the right of privacy means anything, it is the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child... ." 405 U.S. at 453, 92 S.Ct. at 1038.
In Roe v. Wade, supra, an unmarried pregnant woman who wished to undergo an abortion sought a declaratory judgment that the Texas criminal abortion statutes, which proscribed all abortions except those procured or attempted by medical advice for the purpose of saving the life of the mother, were unconstitutional. The Supreme Court held, inter alia, that the right to privacy encompasses a woman's decision whether or not to terminate her pregnancy, but that a woman's right to an abortion is not absolute and may to some extent be limited by the State's interest in safeguarding her health, in maintaining proper medical standards, and protecting potential human life. After listing some decisions in which the Court or individual justices had discerned the existence of the constitutional right to privacy, Mr. Justice Blackmun, writing for the majority, declared:
"... These decisions make it clear that only personal rights that can be deemed `fundamental' or `implicit in the concept of ordered liberty,' Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937), are included in this guarantee of personal privacy. They also make it clear that the right has some *964 extension to activities relating to marriage [citation omitted]; procreation [citation omitted]; contraception [citation omitted]; family relationships [citation omitted]; and child rearing and education [citations omitted]." 410 U.S. at 152-153, 93 S.Ct. at 726.
This statement of the scope of the constitutional right to privacy remains the definitive statement of the law in this area.
Appellants argue that another United States Supreme Court decision, Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), controls the instant controversy. In Stanley, the Court reversed a conviction for possession of obscene matter in violation of a Georgia statute. The appellant in Stanley merely owned certain allegedly obscene films for showing in his own home; these films were seized from his residence incident to a search undertaken to find evidence of bookmaking activities. It is true that, in reversing the defendant's conviction, the Court found the right to privacy to exist in a context outside of the intimate personal relationships at issue in Griswold, Eisenstadt, and Roe v. Wade, supra. But in so doing the Court, speaking through Justice Marshall, laid special emphasis on Stanley's First Amendment rights:
"... [Appellant] is asserting the right to read or observe what he pleases  the right to satisfy his intellectual and emotional needs in the privacy of his own home. He is asserting the right to be free from state inquiry into the contents of his library. Georgia contends that appellant does not have these rights, that there are certain types of materials that the individual may not read or even possess. Georgia justifies this assertion by arguing that the films in the present case are obscene. But we think that mere categorization of these films as `obscene' is insufficient justification for such a drastic invasion of personal liberties guaranteed by the First and Fourteenth Amendments. Whatever may be the justifications for other statutes regulating obscenity, we do not think they reach into the privacy of one's own home. If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch. Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds." 394 U.S. at 565, 89 S.Ct. at 1248.
And in a footnote concerning contraband articles, the Court carefully limited its holding:
"What we have said in no way infringes upon the power of the State or Federal Government to make possession of other items, such as narcotics, firearms, or stolen goods, a crime. Our holding in the present case turns upon the Georgia statute's infringement of fundamental liberties protected by the First and Fourteenth Amendments. No First Amendment rights are involved in most statutes making mere possession criminal." 394 U.S. at 567, n. 11, 89 S.Ct. at 1249.
In two recent cases the United States Supreme Court has declined to extend further the scope of the constitutional right to privacy. The Court recently affirmed the constitutionality of Virginia's anti-sodomy statute even as applied to two consenting adult male homosexuals. Doe v. Commonwealth's Attorney, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976), aff'g, 403 F. Supp. 1199 (E.D.Va. 1975). In Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), respondent's name and photograph were included in a flier of "active shoplifters," after he had been arrested on a shoplifting charge in Louisville, Kentucky. After that charge had been dismissed, Davis brought an action against petitioner police chiefs, who had distributed the flier to area merchants, alleging that petitioners' action under color of law deprived him of his constitutional rights. The Supreme Court, in denying Davis relief held, inter alia, that his contention that the defamatory flier deprived him of his constitutional right to privacy was meritless. Mr. Justice Rehnquist, writing for the majority, suggested:

*965 "... [O]ur other[1] `right of privacy' cases, while defying categorical description, deal generally with substantive aspects of the Fourteenth Amendment. In Roe the Court pointed out that the personal rights found in this guarantee of personal privacy must be limited to those which are `fundamental' or `implicit in the concept of ordered liberty' as described in Palko v. Connecticut, 301 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937). The activities detailed as being within this definition were ones very different from that for which respondent claims constitutional protection  matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. In these areas it has been held that there are limitations on the States' power to substantively regulate conduct." 424 U.S. at 713, 96 S.Ct. at 1166.
Thus, as indicated ante pp. 963-964, Justice Blackmun's articulation in Roe v. Wade of the limited scope of the right to privacy remains the current state of the law.
The foregoing discussion should suggest the inappositeness of the leading Supreme Court cases on the right to privacy and the case we decide today. Here we do not face the intimacies of the marital relationship or of procreation. There is no clear First Amendment issue posed by the question of whether appellant may legally smoke marijuana in his own home. Thus we are not persuaded by the Alaska Supreme Court's resolution of this issue in Ravin v. State, supra. We note further that the Ravin court in part based its decision on state constitutional provisions which have no analogue in Florida.[2] 537 P.2d at 500-504.
Appellant has presented to this Court a sampling of scientific authority to the effect that marijuana poses no significant public health problem. The State, recognizing the limitations of the procedural posture in which this cause reaches us, has made no effort to counter this material. In a proper case appellate courts may take judicial notice of such expert opinions, and, as noted by appellants, scientific authority on the subject of marijuana's harmfulness has been discussed in several such decisions. See, e.g., Ravin, supra; State v. Kantner, 53 Haw. 327, 493 P.2d 306 (1972); People v. Sinclair, 387 Mich. 91, 194 N.W.2d 878 (1972).
This Court is ill-suited to make such a de novo judgment in a case, such as this one, which comes to us on a denial of a motion to dismiss. The record before us is simply inadequate to support a determination of whether the health hazards of smoking marijuana justify its proscription to the general public. None of the parties really argued whether the legislature lacks a "rational basis" for its decision to ban private possession of cannabis.[3] (Since we have determined that there is no fundamental right to smoke marijuana, the test becomes whether there is a "rational basis" for outlawing such an activity as opposed to a "compelling state interest" in the subject matter of the legislation.[4]) Thus in affirming the trial court, we do not foreclose the possibility of making such a determination on a properly-developed record wherein both sides have had an opportunity to present evidence of competing expert authorities before an impartial tribunal.
The judgments are affirmed.
*966 ENGLAND, HATCHETT and DREW (Retired), JJ., concur.
OVERTON, C.J., and BOYD, J., concur in result only.
ADKINS, J., dissenting with an opinion.
ADKINS, Justice, dissenting.
I respectfully dissent.
A constitutional right to privacy has been clearly established by the United States Supreme Court in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). In Stanley v. Georgia, supra, this right was one basis on which the court allowed private possession of materials which the State could properly prohibit an individual from selling. The basis of the regulation considered by the court in Stanley was the exercise of the State's police power to protect the public morals and public decency. The court held that, although exercising the police power to these ends was proper, such power could not be validly extended to punishing private possession of obscene materials. The First Amendment rights of the individual were a second basis for the decision in Stanley; however, allowing regulation of these rights in public while condemning such regulation in private indicates that the right to privacy was the paramount justification for the decision.
No other constitutional rights were coupled with the right to privacy in the other cases cited above. They are clearly applicable to this case since they establish the individual's right to privacy with regard to birth control and abortion, which directly affect the individual's control over his or her bodily functions.
Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), establishes that the court may determine and take judicial notice of the facts which form the basis for legislation. The scientific information provided by appellant and discussed in Ravin v. State, 537 P.2d 494 (Alaska 1975); State v. Kantner, 53 Haw. 327, 493 P.2d 306 (1972); and People v. Sinclair, 387 Mich. 91, 194 N.W.2d 878 (1972), shows that the existence of the alleged harmful effects of marijuana have not been scientifically proven. It is questionable whether marijuana causes physical or moral damage, while the harmful effects of legal recreational drugs  alcohol and tobacco  have been well documented.
As in Stanley, however, the private possession of an object may be acceptable while the sale or use in public of the same object may not. The right to privacy is the only fundamental right which can reasonably be seen as infringed by the marijuana laws. No justification is shown for invalidating the statutes as they relate to sale. The regulation of this substance other than in the home is clearly a proper exercise of the State's police power.
NOTES
[1] The Court had just distinguished Roe v. Wade, supra; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); and Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
[2] Art. I, § 22, Alas.Const., reads:

"The right of the people to privacy is recognized and shall not be infringed. The legislature shall implement this section."
See also Justice Boochever's concurring opinion in Ravin, supra, at 513-516.
[3] "Left to another day is the question of regulation or prohibition of marijuana possession or sale in public and the issue of denial of equal protection, as more harmful recreational drugs [alcohol and tobacco] are not similarly prohibited." Brief of Appellant, pp. 7-8.
[4] For a critical discussion of this two-tier model, see Massachusetts Bd. of Retirement v. Murgia, ___ U.S. ___, 96 S.Ct. 2562, 2568-2573, 49 L.Ed.2d 520 (Marshall, J., dissenting).