366 So.2d 12 (1978)
Linda BOURASSA, Appellant,
v.
STATE of Florida, Appellee.
No. 51926.
Supreme Court of Florida.
October 12, 1978.
Ronald K. Zimmet, Asst. Public Defender, Holly Hill, for appellant.
Robert L. Shevin, Atty. Gen. and Charles W. Musgrove, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Affirmed. See Hamilton v. State, 366 So.2d 8 (Fla. 1978).
ENGLAND, C.J., and BOYD, OVERTON, SUNDBERG, HATCHETT and ALDERMAN, JJ., concur.
ADKINS, J., dissents with an opinion.
*13 ADKINS, Justice, dissenting.
This is a direct appeal from a decision of the County Court of Volusia County which held sections 893.03(1)(c)(10) and 893.13(1)(f), Florida Statutes (1975), which prohibit possession of marijuana, constitutional.
The questions of whether marijuana is healthy or harmful, whether the sale or possession should be legal or decriminalized, or whether it should be used by any individual, are not material to the disposition of this case and should not be considered. Assuming that marijuana is harmful, does the record show that the harmful effects of marijuana are such that it is irrational to classify it with heroin, morphine, LSD, and other hallucinogenic drugs? If so, this is an unreasonable classification and, regardless of the morality concept of some persons, the statute must fall.
The appellant, Ms. Bourassa, was caught attempting to take clothing from a discount store. A policeman arrested her, and when her purse was searched, cannabis was found in it.
Ms. Bourassa was charged with, among other things, possession of under five grams of cannabis, in violation of Section 893.03(1)(c) and Section 893.13(1)(f), Florida Statutes. She filed a motion to dismiss the cannabis charge, alleging that the Florida cannabis statutes violate her right to equal protection as secured by the United States and Florida Constitutions.
The court had an evidentiary hearing on the motion to dismiss. Ms. Bourassa called expert witnesses to testify about the nature of cannabis in comparison with the other substances classified by the statutes. The court, after reviewing the evidence, upheld the statutes finding that the classification of marijuana has a rational basis in fact with opiates, amphetamines, barbiturates and hallucinogens.
Ms. Bourassa's witnesses were three highly qualified doctors who participated in a two-year study in Costa Rica of the effects of heavy (average of nine cigarettes per day), long term (ten years) marijuana use. The study was structured to minimize the effects of alcohol and other drug use as well as to monitor marijuana potency. After several years of study the doctors concluded the subjects' health, family life, work habits, and sociological development were not adversely affected by their marijuana use. Differences between the users and nonusers studied, such as higher incidences of venereal disease and criminal activity for users, were attributed to life styles rather than marijuana use and often predated marijuana use. The doctors all said marijuana was not comparable in effect or dangerousness to the other substances listed as controlled in Section 893.03(1), Florida Statutes (1975).
The state's witness, a psychiatrist, said he regularly treated patients, especially young ones, who had problems attributable to marijuana use. He felt there were enough problems in life without legalizing marijuana. All the witnesses agreed marijuana caused euphoria and temporarily mildly affected motor skills.
The judge's order said evidence showed long term use of marijuana was not harmful. But he denied the motion to dismiss because he was not convinced its short term effects were significantly different from those of the drugs with which it is classified.
Florida laws governing the use, regulation, distribution and prohibition of drugs were found in Chapter 893, Florida Statutes (1975). The chapter is titled the Florida Comprehensive Drug Abuse Prevention and Control Act and is quite complex. Section 893.03, Florida Statutes (1975) lists some 131 different substances as controlled. The list is divided into five schedules. Cannabis (Marijuana) and its active ingredient, Tetrahydrocannabinol, are listed in the first schedule along with heroin, morphine, other opiates, amphetamines, lysergic acid diethalamide (LSD) and other hallucinogens. Possession of all controlled substances not lawfully obtained is prohibited by Section 893.13(1)(3), Florida Statutes (1975), and made a third degree felony. The schedule a drug is in does not affect the definition of *14 or the penalty for its unlawful possession. The crime of possession of a controlled substance is reduced to a first degree misdemeanor by Section 893.13(1)(f), Florida Statutes (1975), if the controlled substance is cannabis, if the offense is the possessor's "first offense", and if the possession is not for compensation. Ms. Bourassa was convicted of the crime created by the interaction of these three statutes.
Ms. Bourassa claims marijuana is so radically different from the drugs it is classed with by the statutes that the classification is irrational and therefore denies her the equal protection guaranteed by the 14th amendment to the United States Constitution and Section 2, Article I, of the Florida Constitution. The state argues the classification has not been proved irrational.
Florida and Federal courts have long since agreed a law creating classifications without a rational basis denies equal protection. The Federal "rational basis" test has been articulated in a number of ways. For one test, the Supreme Court has said a statutory discrimination will be upheld if any state of facts may reasonably be conceived to justify it. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). As another test, the court has said a classification must rest upon a difference having a fair and substantial relation to the law's objective. Royster Guano Co. v. Virginia, 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920). These statements and others running the gamut between them have entertained the minds and pens of legal scholars for years. See, Soler, Of Cannabis and the Courts: A Critical Examination of Constitutional Challenges to Statutory Marijuana Prohibitions, 6 Conn.L.R. 601 (1974).
Florida courts' articulation of the "rational basis" test for determining if Florida's equal protection guarantee has been violated, although varyingly phrased, is most closely analagous to the requirements of Royster Guano Co., supra. Both tests require more than a hypothetical rational basis for a classification. This court has interpreted the Florida Constitution to require a "valid and substantial reason for classifications." Moore v. Thompson, 126 So.2d 543 at 548 (Fla. 1961); accord, Henderson v. Antonacci, 62 So.2d 5 at 9 (Fla. 1952). The requirement has also been termed one for "reasonable justification", State ex rel. Gerstein v. Hialeah Race Course, Inc., 245 So.2d 53 at 57 (Fla. 1971), or "a just, fair and practical basis" for the classification "based on a real difference which is reasonably related to the subject and purpose of the regulation", Newman v. Carson, 280 So.2d 426 at 429 (Fla. 1973). See also, State v. Lee, 356 So.2d 276 (Fla. 1978); United Gas Pipe Line Co. v. Bevis, 336 So.2d 560 (Fla. 1976); Gammon v. Cobb, 335 So.2d 261 (Fla. 1976); O'Donnell v. State, 326 So.2d 4 (Fla. 1975); Selby v. Bullock, 287 So.2d 18 (Fla. 1974); Pacheco v. Pacheco, 246 So.2d 778 (Fla. 1971); McKee v. State, 203 So.2d 321 (Fla. 1967); Larson v. Lesser, 106 So.2d 188 (Fla. 1958). To determine the rationality of a law the court must look at the purpose the law serves, the facts involved, the impact of the law upon citizens and the relationship between the law and these factors.
The statute challenged in O'Donnell v. State, 326 So.2d 4 (Fla. 1975) was analyzed in this manner. There the constitutionality of Florida's law providing at least 30 years imprisonment for kidnapping was challenged as denying equal protection because it classified "passive" kidnappers with "active" ones. O'Donnell was a member of a group which kidnapped someone although he took no active part in the abduction. He claimed classification of himself with the other "active" kidnappers was so irrational he was denied equal protection. Rejecting O'Donnell's claims, the court upheld the statutes. The nature of the crime, society's need to deter the crime, and the undeniable participation of even a "passive" actor in the kidnapping together provided a rational basis for the classification. Likewise in Newman v. Carson, 280 So.2d 426 (Fla. 1973), the court looked closely at the facts, the statute's purpose, and their relationship to the classifications made before rejecting a claim that equal protection had been denied. The law challenged in Newman required pawnbrokers and some others to keep certain records of the goods they *15 bought and sold. Only "regular junk dealers" were affected and the law excepted sales of auto parts, household goods and furniture. The court considered the high rate of theft and the practical effect of the law, frustration of the sale of stolen goods and assistance in return of stolen goods, the nature of goods most often stolen and the markets they were disposed of in before determining the statute's classifications had a fair and practical basis and were reasonably related to the law's purpose.
The same standards have been applied to classifications which do not subject citizens to criminal sanctions. In United Gas Pipe Line Co. v. Bevis, 336 So.2d 560 (Fla. 1976) the court determined a statute which allowed the Public Service Commission (PSC) to regulate gas sales otherwise totally exempted from PSC regulation upon petition by an affected industrial user was unconstitutional because it did not rationally further the statute's purpose, providing the public utilities at a fair price. The statute denied equal protection because the class benefited was not the public and there was no assurance the class would pass on to the public any benefits received.
Quite recently in State v. Lee, 356 So.2d 276 (Fla. 1978), the law creating the Good Drivers' Incentive Fund was determined to deny equal protection because the classifications created were not reasonably related to the law's purpose of encouraging safe driving. The classifications prohibited drivers from receiving incentive payments if they were convicted of "moving violations". The court found this classification unconstitutional because some "moving violations", such as driving over a fire hose, were not related to safe driving.
Just as the courts in the foregoing cases examined the classifications created, the goals served, and the ends achieved, we must examine the purpose of classifying marijuana as a controlled substance, its actual physical characteristics, the physical characteristics of the other substances it is classified with, and the relation between them and the class created to determine if there is a valid and substantial reason for the classification.
Last year in Laird v. State, 342 So.2d 962 (Fla. 1977), this court ruled upon the constitutionality of the statutes involved here. The court's interest in Laird was whether the statute affected a fundamental interest. Although the court noted "[i]n a proper case appellate courts may take judicial notice of ... expert opinions ... and scientific authority", it refrained from doing so saying:
This Court is ill-suited to make such a de novo judgment in a case, such as this one, which comes to us on a denial of a motion to dismiss. The record before us is simply inadequate to support a determination of whether the health hazards of smoking marijuana justify its proscription to the general public. None of the parties really argued whether the legislature lacks a "rational basis" for its decision to ban private possession of cannabis .. . Thus in affirming the trial court, we do not foreclose the possibility of making such a determination on a properly-developed record wherein both sides have had an opportunity to present evidence of competing expert authorities before an impartial tribunal. Laird, supra, at 965 (footnotes omitted).
We now have "a properly-developed record". The rationality of marijuana's classification as a controlled substance was argued below and here. Both sides presented evidence on the issue to the trial judge. In addition, taking judicial notice of scientific authority is appropriate since the issues involved are not new on appeal. And the need is great when determining the rationality of a legislative classification to consider all the commonly available authoritative information. The appellate court has this right and need. See, Laird, supra; Schriver v. Tucker, 42 So.2d 707 (Fla. 1949); Mitchum v. State, 251 So.2d 298 (Fla. 1st DCA 1971); Ritholz v. Johnson, 244 Wis. 494, 12 N.W.2d 738 (1944); State v. Meyers, 61 Wash.2d 772, 380 P.2d 735 (1963); State v. Larson, 81 S.D. 540, 138 N.W.2d 1 (1965). Accordingly, in addition to considering the *16 testimony in this case the court has considered A Report of the Commission of Inquiry Into the Non-medical Use of Drugs, Cannabis (Crown, 1972 ed.) [hereinafter cited as Canadian Commission Report]; Report of the National Commission on Marijuana and Drug Abuse, Marijuana: A Signal of Misunderstanding (Signet, 1972), [hereinafter cited as Signal of Misunderstanding]; Second Report of the National Commission on Marijuana and Drug Abuse, Drug Use in America: Problem in Perspective (U.S. Government Printing Office, 1973), [hereinafter cited as Problem in Perspective]; Rubin, Vera and Comitas, Lambros, Ganja in Jamaica, The Effects of Marijuana Use (Anchor 1976), [hereinafter Ganja in Jamaica]; Fifth Annual Report to the United States Congress from the Secretary of Health, Education, and Welfare, Marijuana and Health (U.S. Government Printing Office, 1975), [hereinafter cited as HEW Report]; and The Report of the Study of Chronic Cannabis Use in Costa Rica participated in by the witnesses below [hereinafter cited as the Costa Rican Report].
The statute now challenged and similar statutes have been challenged on varying constitutional grounds through the years. In 1969 we held the then existing laws prohibiting possession of marijuana did not deny equal protection. Borras v. State, 229 So.2d 244 (Fla. 1969). In the intervening years marijuana has been extensively studied and the amount of information available about it and its effects has increased to such an extent that re-examination of the law is appropriate.
By prohibiting possession of certain drugs the legislature is exerting its power to protect the health, safety and welfare of the people. By classifying marijuana with the opiates, amphetamines, and barbiturates both in prohibition and punishment the legislature has determined their possession presents similar dangers. Our comparison of the effects of marijuana use on both the individual and society with the effects of other drug use demonstrates there is no rational basis for classifying marijuana with the other controlled substances.
The physical, psychological, and social dangers of opiates, amphetamines, and barbiturates are well documented and agreed upon. Extended use of any of these drugs usually causes physical deterioration and sometimes death. A single administration of a sufficient quantity of any of them can cause death. In contrast, no significant physical harm from marijuana use has been demonstrated.[1] In fact, "[a] careful search of the literature and testimony of the nation's health officials has not revealed a single human fatality in the United States proven to have resulted solely from ingestion of marijuana. Experiments with the drug in monkeys demonstrated that the dose required for overdose death was enormous and for all practical purposes unachievable by humans smoking marijuana." Signal of Misunderstanding at 104.
Marijuana's primary short-term physical effects are inducement of a mild pleasant euphoria, enhancement of perception and a slight slowing of temporal perceptions.[2] These may be something the law should require people to forego, but they do not present a danger to society comparable to the encouragement of violence by barbiturates and amphetamines or the total misperception of reality and hallucinations LSD can cause.[3]
*17 Marijuana may even reduce violent tendencies in its users.[4] Only two debilitating physical effects have been linked to marijuana use. Preliminary research shows that smoking marijuana may cause slight lung damage, no different from that caused by smoking other herbs, and that marijuana use may effect testosterone levels in the blood.[5] But neither of these effects have yet been thoroughly documented and, more importantly, they are not the least bit comparable to the effects of the drugs with which the law presently classifies marijuana.
Opiates, barbiturates, and amphetamines are all known to be addicting. Their addictive powers make these drugs dangerous to society and the individual in two ways. First, the addiction may cause continued and increasing use with the attendant physical deterioration of the user. Second, addicted users may find the need to obtain the drugs so strong that they will use any means including crime to obtain the drug or money for it.
Addiction is a broad word used to refer to dependencies caused by a variety of factors. A dependency may develop from a chemical change in the body, usually coupled with a growing tolerance for the drug requiring larger and larger doses and severe physical reactions such as tremors, nausea, hallucinations or even death when the drug is withheld.[6] The opiates are the drugs best known to produce this type of dependency, but barbiturates and amphetamines also produce it.[7] The authorities reviewed by this court have found marijuana users do not develop this sort of dependency.[8] This was true even of the users studied in Jamaica and Costa Rica who had been using marijuana heavily for years.[9] In addition to a physical dependency drug users may develop a psychological dependency upon a drug so strong that they cannot function without it. Opiates, barbiturates, and amphetamines are all known to cause this sort of dependency. Marijuana does not. Although marijuana is sometimes erroneously referred to as psychologically addicting, the authorities report the need of the marijuana user for marijuana is no different than that any person has to continue a pleasing habit. That is, the experience is pleasant and the user repeats it because it was.[10] But the desire to repeat it does not become compelling or necessary for existence. Extended use of opiates, barbiturates, and especially amphetamines can often cause mental illnesses, particularly psychosis.[11] Hallucinogens like LSD also cause psychosis.[12] Marijuana use does not cause mental illness. In cases where mental illness has been attributed to marijuana, an underlying psychosis usually already existed or other drugs were involved. Furthermore, the vast majority of marijuana users studied did not suffer from any mental illness.[13]
Nor does marijuana lead to use of other drugs. Many marijuana users do not go on to use other drugs. When they do it is the *18 result of the subculture and society in which they exist, not of a marijuana-created drive.[14]
The authorities studied have not found marijuana to have any significant effect upon a user's family life, work habits, or other behavior. Interestingly, the doctors participating in the Costa Rican study found marijuana users to have slightly more stable family and work lives than non-users. This contrasts sharply with the havoc the physical and psychological damage of opiates, amphetamines and barbiturates wreaks upon the lives of those dependent upon them.[15]
In every relevant attribute marijuana has been shown to differ dramatically from the substances with which it is classified. It has been shown to be a relatively innocuous drug. And it certainly does not present the dangers to society or an individual of the drugs with which it is classified. We can find no rational basis for so classifying it.
Other courts passing upon the constitutionality of similar statutes have reached varying results. Several have concluded classification of marijuana with the opiates is irrational and denies marijuana users equal protection. State v. Anonymous, 32 Conn.Sup. 324, 355 A.2d 729 (1976); People v. Sinclair, 387 Mich. 91, 194 N.W.2d 878 (1972); People v. McCabe, 49 Ill.2d 338, 275 N.E.2d 407 (1971). Others have not. United States v. Maiden, 355 F. Supp. 743 (D.Conn. 1973); State v. Mitchell, 563 S.W.2d 18 (Mo. 1978); State v. White, 153 Mont. 193, 456 P.2d 54 (1969). The state has relied heavily upon Maiden and Mitchell. We have found the rationale in these cases wanting in several ways. The court in Mitchell acknowledged the existence of much of the current information about marijuana, but the court did not examine the information and determine some rational basis for classifying marijuana with the opiates. It only said the classification had not been shown irrational  mentioning without identifying authorities contrary to the ones finding marijuana significantly different from the opiates. Our constitution calls for a more searching look at the facts to determine if a rational basis for a legislative classification exists. One of the dissenting justices in Mitchell wrote that information available today "demonstrates that marijuana is a substance of relatively harmless character ... and so is unreasonably classified ... with the opiates and barbiturates." Mitchell, supra, at 35 (Shangler, Special Judge, dissenting).
Maiden, supra, decided the federal Comprehensive Drug Abuse Prevention and Control Act of 1970, P.L. 91-513, 84 Stat. 1242, which inspired Florida's law, did not deny equal protection guaranteed by the United States Constitution. As noted earlier the federal courts have not been consistent in their articulation of a "rational basis" test and oft times apply a test less demanding than we have held Florida's Constitution to require. In addition the court acknowledged the dissimilarity of marijuana and opiates. But the federal law, unlike Florida's, does not treat possessors of marijuana as it treats possessors of opiates and other drugs. Thus the federal law's classification of marijuana with opiates does not classify the user with opiate users as Florida's statute does. The Maiden court also relied upon the law's provision for lesser penalties for offenses involving small amounts without remuneration as saving the statute from denying equal protection. We cannot accept that rationale nor apply it to Florida's law. Possession of all controlled substances is prohibited by the statute, and possession of marijuana subjects one to the same penalties possession of heroin does. Marijuana and marijuana users are thus classified with heroin and heroin users. Section 893.13(1)(f) Florida Statutes (1975), reduces the penalty in certain situations but not the classification. The reduction does not distinguish between marijuana and other drugs, but between possessors of a small amount who have escaped prior *19 apprehension and are not seeking compensation. The irrational classification remains.
The classification of marijuana with opiates is irrational and denies Ms. Bourassa the equal protection of law promised by Florida's constitution. This does not mean marijuana's use or possession may not be regulated or even prohibited and punished. It only means that the danger to the public presented by marijuana and its use is so different and less severe than that presented by opiates that it may not constitutionally be treated as if it presented the same dangers.
The decision of the trial court should be reversed.
NOTES
[1] "No conclusive evidence exists of any physical damage, disturbances of bodily processes or proven human fatalities attributable solely to even very high doses of marijuana." Signal of Misunderstanding at 69.

Blood pressure and eye fluid pressure change slightly when an individual is experiencing the effects of marijuana use. Slight changes of perception are also caused. But the effects are temporary and none have been shown inherently harmful. Signal of Misunderstanding, pp. 68-74, 80; Canadian Commission Report, pp. 47-52, 112; HEW Report, pp. 4, 5, 78, 32-86; Ganja in Jamaica, pp. 84-107, 116.
[2] Signal of Misunderstanding, pp. 68-74, 80; Canadian Commission Report, pp. 47-52, 57-66, 111-114; HEW Report, pp. 82-85.
[3] Problem in Perspective, pp. 150-153, 159, 165; Canadian Commission Report, pp. 47-52.
[4] "No evidence exists that marijuana use will cause or lead to the commission of violent or aggressive behavior by the large majority of psychologically and socially mature individuals in the general population." Signal of Misunderstanding, at 91. See also, Signal of Misunderstanding, pp. 86-91; Problem in Perspective, p. 159; Canadian Commission Report, pp. 107-110; HEW Report, pp. 80-82.
[5] Signal of Misunderstanding, p. 106; Canadian Commission Report, pp. 118-119; HEW Report, pp. 80-82.
[6] Problem in Perspective at 131.
[7] Problem in Perspective at 131.
[8] Signal of Misunderstanding, pp. 61-77, 108; Problem in Perspective, pp. 131, 159; Canadian Commission Report, pp. 119-125; HEW Report, pp. 90-93.
[9] Ganja in Jamaica, 135-138.
[10] Signal of Misunderstanding, p. 108; Problem in Perspective, pp. 147, 116-118; Canadian Commission Report, pp. 119-125.
[11] Problem in Perspective, pp. 150-152; Canadian Commission Report, p. 89.
[12] Problem in Perspective, pp. 150-152; Canadian Commission Report, p. 89.
[13] Signal of Misunderstanding, pp. 72-73; Canadian Commission Report, pp. 102-107; HEW Report, p. 87; Ganja in Jamaica, pp. 123-124.
[14] Signal of Misunderstanding, pp. 54-59, 108-110; Canadian Commission Report, pp. 128-130.
[15] Problem in Perspective, pp. 157-164, 189-197.