**UNITED STATES of America**

v.

**Harry Tobin MAIDEN et al.**

**Crim. No. H–315.**

United States District Court, D. Connecticut.

Feb. 27, 1973.

Jon A. Sale, Asst. U. S. Atty., Hartford, Conn., for plaintiff.

John R. Williams, New Haven, Conn., John R. Gamm, Hamden, Conn., Thomas D. Clifford, Federal Public Defender, New Haven, Conn., R. T. Meehan, Bridgeport, Conn., Mark Soler, Student Intern, New Haven, Conn., for defendants.

## MEMORANDUM OF DECISION ON MOTION TO DISMISS

NEWMAN, District Judge.

This motion to dismiss an indictment raises a host of broad constitutional

challenges to the criminalization of marijuana. Defendants are charged in a three-count indictment with three offenses relating to marijuana. Count one charges they "knowingly and intentionally possessed, with intent to distribute and dispense" 500 pounds of marijuana; count two charges they "knowingly and intentionally distributed and dispensed" 180 pounds of marijuana; and count three charges they conspired to commit the substantive offenses, 21 U.S.C. §§ 841, 846.

The Comprehensive Drug Abuse Prevention and Control Act of 1970, P.L. 91–513, 84 Stat. 1242, prohibits the distribution and possession of marijuana through a set of related provisions. In § 101 of the Act, Congress has found that local distribution of controlled substances has "a substantial and direct effect upon interstate commerce." 21 U.S.C. § 801. Section 202 of the Act establishes five schedules of controlled substances and places marijuana in Schedule I. 21 U.S.C. § 812(c), Schedule I(c)(10). Section 401 of the Act provides penalties for anyone who distributes or possesses with intent to distribute a controlled substance. 21 U.S.C. § 841(a)(1). The maximum penalty for distribution or possession, with intent to distribute, of any controlled substance in Schedule I which is not a narcotic drug is imprisonment for five years and a fine of $15,000, 21 U.S.C. § 841(b)(1)(B), except that the maximum penalty for distributing a "small amount" of marijuana "for no remuneration" is imprisonment for one year and a fine of $5,-000. 21 U.S.C. §§ 841(b)(4), 844(a). Section 102 of the Act defines "marihuana" and "narcotic drug" in such a way that the former is not included within the latter. 21 U.S.C. § 802(15), (16).

In support of their constitutional challenges to these provisions, defendants presented impressive testimony from acknowledged drug experts, including Dr. Lester Grinspoon, professor of psychiatry at the Harvard Medical School, and Dr. Joel Fort, of the University of California, a longtime consultant to the World Health Organization. Their testimony established the following points. Marijuana is a relatively mild drug. Its short-term physical effects are a slight lowering of blood pressure, a slight increase in pulse rate, and a reddening of the whites of the eyes. Its short-term psychological effects are a feeling of euphoria, a sense of, but not necessarily the actuality of, enhanced perceptions, some distortion of temporal sense, enhanced appetite, brief impairment of memory, and, among a small number of users, some psychological disturbances such as unpleasant feelings of anxiety, an accentuation of one's neuroses, and even paranoia. The drug has not been known to cause long-term physical or phychological effects. It is not addicting in the precise sense that it does not create tolerance, i. e., adaptation by the body so that increasing doses are required to produce the desired effect, nor does it produce withdrawal illness, i. e., physical symptoms occurring when use of the drug is suspended. Its use creates some psychological dependence in the same manner that a person becomes habituated to various substances and routines and becomes somewhat irritable and restless when practice of the habit is interrupted. The drug does not induce a user to commit crimes or violent acts. While many users of other drugs have used marijuana, only a small percentage of marijuana users progress to use of other drugs, and there is nothing about marijuana intrinsically that leads to use of more dangerous drugs.

The doctors testified not only that the above conclusions were correct but also that there are no scientifically reliable studies to support contrary views. The government offered no evidence. Thus the record established here can lead to no other significant conclusions than that marijuana is a relatively mild mind-altering drug, that its principal effect is to induce short-term euphoria, and that it has the capability to produce psychological disturbances, occasionally severe, among a small number of users.

The balance of defendants' evidence established that other drugs, both those included under the Act as controlled substances such as heroin, barbiturates, amphetamines, and LSD, and those not covered by the Act, such as alcohol, nicotine, and caffeine, all have some adverse effect on physical or mental health or both that either are not associated with marijuana or are more serious, in some respects, than the effects of marijuana.

From these facts defendants contend that the Act's provisions penalizing the marijuana offenses charged in the indictment are unconstitutional in that they abridge the defendants' right to privacy, deny them due process of law and the equal protection of the laws, and impose upon them cruel and unusual punishment.

██ A constitutional right to privacy, immune from governmental abridgement, has been recognized in some contexts, such as private possession of obscene material in one's home, Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), and a woman's decision with medical advice to seek an abortion in the early stage of pregnancy, Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (Jan. 22, 1973). Defendants contend for an equivalent right to use marijuana, relying on Stanley's assertion of the "right to satisfy [one's] intellectual and emotional needs in the privacy of [one's] own home." 394 U.S. at 565, 89 S.Ct. at 1248. The analogy is rendered doubtful by Stanley's disclaimer of any limitation on the power of government to make possession of narcotics a crime. 394 U.S. at 568, n. 11, 89 S.Ct. 1243.[1] Moreover, the abortion decision explicitly declined to recognize a generalized right to use one's body as one pleases. 410 U.S. 113, 93 S.Ct. 705. See Jacobson v. Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905).

But even if there were a right to be free of governmental intrusion to punish possession and use of marijuana in the privacy of one's home, the Supreme Court has not indicated that such a protection would provide similar insulation for distribution. "The focus of [Stanley] was on freedom of mind and thought and on the privacy of one's home. It does not require that we fashion or recognize a constitutional right . . . to distribute or sell . . . ." United States v. Reidel, 402 U.S. 351, 356, 91 S.Ct. 1410, 1412, 28 L.Ed.2d 813 (1971). Thus the Supreme Court was unwilling to predicate a general right to receive and distribute upon a right to possess, an extension thus far developed only as to items protected by the First Amendment. See, e. g., Martin v. City of Struthers, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943); Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); Lovell v. Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938). As to written or oral communications the First Amendment extends protection not only to the content of the material but also to the process of communication. No similar protection has been accorded distribution of substances that lack First Amendment protection.[2] Whatever logic

---

1. Nothing in the Stanley footnote suggests that the Court used the word "narcotics" in careful distinction to other non-narcotic drugs.

2. Arguably, Baird v. Eisenstadt, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), gives some indication of a right to distribute an item not protected by the First Amendment to a person enjoying a right to possession and use of the item. The Court affirmed the reversal of Baird's conviction for distributing a contraceptive product to a single woman who was held entitled to use it. The opinion permitted Baird to predicate his constitutional claim upon her right of possession and use. 405 U.S. at 445–446, 92 S.Ct. 1029. But this was a ruling only upon his standing to assert her rights. Moreover, the constitutional claim of his that was upheld was not a general right to distribute, but only a right to be free of arbitrary classifications that violated the equal protection clause. In upholding his claim that distribution to a single woman could not be prohibited while distribution to a married woman was permitted, the Court explicitly

inheres in the proposition that a right to possess requires a corollary right to receive and distribute is dispelled upon closer analysis of the right to possess. As *Stanley* and *Reidel* make clear, what is being safeguarded by recognition of a "right to private possession" is really not possession of an item, much less access to it, but simply protection against unwarranted governmental intrusion into one's privacy to determine if the item is there. Valuable as that protection is, it does not carry with it any corresponding right to the distribution of what a person may wish to possess within his home. His privacy remains unimpaired whether or not he is able to secure possession. These defendants are not charged with use of marijuana or possession for private use, but with distribution and possession with intent to distribute.

 Next defendants attack as arbitrary the provisions of federal law that accomplish the proscription of marijuana distribution. They contend the provisions are irrational in omitting alcohol and nicotine, in providing equivalent penalties for marijuana and for such drugs as amphetamines, barbiturates and LSD, and in classifying marijuana in Schedule I along with heroin.

The premise of defendants' first two contentions is that the Equal Protection Clause requires legislators to scale penalties in proportion to the danger of the conduct penalized. The premise is not sound. In setting penalties, Congress is not limited to an assessment of harm. Even if barbiturates and amphetamines pose greater health hazards than marijuana, Congress is entitled to conclude that the pervasiveness of marijuana distribution justifies an equivalent maximum penalty or that such penal purposes as general deterrence will be appropriately served by such a penalty. Nor is Congress required to take an all or nothing approach to drug regulation. Marijuana, however relatively slight a health hazard it may be to the total population, is a drug that can cause euphoria at low doses and hallucinogenic reaction at higher doses among most users, and a severe psychological disturbance among a few users. Congress can rationally conclude that interstate traffic in such a drug should be prohibited by a maximum five-year penalty.[3] This judgment is not rendered irrational because a similar penalty is established for distribution of more dangerous substances, nor because other drugs with capacity for harm are not prohibited. The legislative

---

noted that his equal protection argument was valid either if, under Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), there is a right to distribute or, alternatively, "if . . . *Griswold* is no bar to a prohibition on the distribution of contraceptives." 405 U.S. at 453, 454, 92 S.Ct. at 1031. Such alternative argumentation is scarcely the development of a right to distribute whatever can be possessed.

3. Defendants do not dispute that if Congress can ban interstate distribution of marijuana under the Commerce Clause, it can reasonably conclude that intrastate prohibition is "essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801(6). United States v. Camacho, 468 F.2d 1220 (9th Cir. 1972).

Defendants do dispute the factual basis for the Congressional finding as to marijuana that distribution of controlled sub-

stances has "a substantial and detrimental effect on the health and general welfare of the American people." 21 U.S.C. § 801(2). The adverse effects upon some users noted by defendants' experts may well have been thought substantial and detrimental by Congress, even though they apparently occur infrequently. In any event, ever since United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941), Congressional power to prohibit the interstate distribution of goods has not depended on the reasons why Congress might wish to do so. Whether or not the effect of marijuana on the health and welfare of the American people is as substantial and detrimental as the other controlled substances to which the Congressional finding plainly applies, Congressional power to prohibit its distribution under the Commerce Clause is unimpaired.

judgment concerning alcohol and nicotine may well have taken into account the degree to which their dangers are known, the adverse consequences of prohibition, and the economic significance of their production. Whether such factors should lead to similar judgments concerning marijuana is within legislative discretion.

Defendants rely on Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), holding unconstitutional sterilization for defendants convicted three times of larceny but not embezzlement, and recent cases barring classification of marijuana as a narcotic. English v. Miller, 341 F.Supp. 714 (E.D. Va.1972); People v. Lorentzen, 387 Mich. 167, 194 N.W.2d 827 (1972); People v. Sinclair, 387 Mich. 91, 194 N.W.2d 878 (1972); People v. McCabe, 49 Ill.2d 338, 275 N.E.2d 407 (1971). *Skinner* does not establish a general rule that penalties must be scaled according to harm. Sterilization for larceny but not embezzlement was irrational because there was no rational basis for thinking that criminal traits could be inherited for one offense but not the other. "We have not the slightest basis for inferring that that line has any significance in eugenics, nor that the inheritability of criminal traits follows the neat legal distinctions which the law has marked between those two offenses." 316 U.S. at 542, 62 S.Ct. at 1113.

*English, Lorentzen, Sinclair,* and *McCabe* all invalidated statutes that classed marijuana as a narcotic, which it demonstrably is not. But those cases cast no doubt on equivalent maximum penalties for marijuana and other non-narcotic drugs. *McCabe* held that marijuana should have been penalized under Illinois' Drug Abuse Control Act, which covers barbiturates, amphetamines and LSD. *Sinclair* expressed a similar view with respect to Michigan's non-narcotic statute. 194 N.W.2d at 887, n. 36.

■ However, these cases do have relevance to defendants' third equal protection claim, the arbitrariness of placing marijuana in Schedule I with heroin and other narcotics. Their argument might well have force if the classification in Schedule I was the real determinant of the penalties they face. But this is not the case. The classification of marijuana in Schedule I has significance for the regulatory aspects of the Act, *e. g.,* §§ 303–307, 21 U.S.C. §§ 823–827, but does not determine the criminal aspects. When Congress determined the criminal penalties for distribution of drugs covered by the Act, it gave precise attention to marijuana and established a scheme of penalties that applies only to this drug. Distribution and possession with intent to distribute marijuana carry the five-year maximum applicable to drugs in Schedule III, 21 U.S.C. § 841(b)(1) (B) and distribution of a small amount of marijuana for no remuneration, unlike any other drug under the Act, carries a one-year maximum. 21 U.S.C. §§ 841(b)(4), 844(a). Why Congress placed marijuana in Schedule I and then penalized its distribution according to a scheme of penalties inapplicable to any other substance in that schedule or the entire Act is not clear. Nevertheless there has been a specific Congressional judgment as to the penalties for marijuana distribution. The listing of marijuana in Schedule I is only a point of reference for the designation of those penalties, but it is obvious that Congress has not imposed upon marijuana distribution the penalties for distribution of the narcotic drugs classified in that schedule. In these circumstances the validity of an indictment subjecting defendants to the marijuana penalties does not depend on whether the findings required for a Schedule I listing apply to marijuana.[4]

4. Defendants' attack on whether the findings required for Schedule I apply to marijuana assumes that for each schedule, all three findings must be met. This may be so only in a limited sense. Section 202 of the Act, in establishing the three findings for each of the five schedules, does not in terms specify whether the findings

■ Whether defendants' claim that the Act's penalties violate the Eighth Amendment's ban on cruel and unusual punishment can be raised on this motion to dismiss is doubtful, since constitutional defects in a penalty provision have been held not to justify dismissal of an indictment. United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). In any event a five-year maximum for traffic in large quantities of marijuana violates no Eighth Amendment standards. The penalty for this activity is quite unlike *Lorentzen*, where a 20-year minimum penalty was imposed for selling marijuana, or *Sinclair*, where a 9½-year penalty was imposed for possession of two marijuana cigarettes.

The remaining grounds of the motion do not warrant dismissal of the indictment.[5]

Accordingly, the motion to dismiss the indictment is denied.

---

are cumulative. 21 U.S.C. § 812. In fact they cannot logically be read as cumulative in all situations. For example finding (B) for Schedule I requires that "The drug or other substance has no currently accepted medical use in treatment in the United States." Finding (B) for the other four schedules specifies that the drug has a currently accepted medical use. At the same time, finding (A) requires that the drug has a "high potential for abuse" for placement in Schedule I, but a "potential for abuse less than the drugs or other substances in schedules I and II" for placement in Schedule III. If the findings are really cumulative, where would one place a drug that has no accepted medical use but also has a potential for abuse less than the drugs in Schedules I and II? According to finding (A) for Schedule III it belongs in Schedule III, but finding (B) for that schedule precludes Schedule III; according to finding (B) for Schedule I it belongs in Schedule I, but finding (A) for that schedule appears to preclude Schedule I. The answer may be that applicability of finding (B) concerning currently accepted medical use should be made first. If the drug has none (and marijuana

probably does not, though the testimony indicated some interesting potential uses), then placement in Schedule I may be appropriate whether or not the potential for abuse is higher than for other drugs, so long as the abuse potential is not minimal. But once a substance is precluded from Schedule I because an accepted medical use currently exists, then the comparative potential for abuse may determine its placement in Schedules II, III, IV, or V.

5. In view of the rejection of defendants' constitutional challenges, it is unnecessary to decide whether the Single Convention of Narcotic Drugs, 18 U.S.T. 1407 applies to marijuana that does not include the flowering tops of the cannabis plant, Single Convention Art. I(1)(b), or whether this treaty was intended to displace constitutional protections, Single Convention Art. 36, or whether such displacement would be valid. *Compare* Missouri v. Holland, 252 U.S. 416, 40 S.Ct. 382, 64 L. Ed.2d 641 (1920), *with* Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957). *But see* United States v. Camacho, *supra*.