**Harry L. WOLKIND**

v.

**Willard P. SELPH.**

**Civ. A. No. 79–0311–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

July 2, 1980.

J. Flowers Mark, Alexandria, Va., for plaintiff.

John R. Alderman, Asst. Commonwealth Atty., Richmond, Va., for defendant.

## MEMORANDUM

WARRINER, District Judge.

On 2 August 1977, upon pleas of not guilty and upon a trial to the Circuit Court of Henrico County, Virginia, petitioner Harry L. Wolkind was convicted of viola-tions of Va.Code §§ 18.2–248 and 18.2–250 (Repl.Vol.1975 & Supp.1977), possession of marijuana with the intent to distribute and possession of cocaine. On the marijuana charge defendant was sentenced to a term of five years, which sentence was suspended for 20 years on the condition that he pay a $3,500 fine, plus costs, and serve 9 months in the Henrico County Jail. On the cocaine charge he was sentenced to a term of one year, six months of which was suspended and a $500 fine plus costs, to run consecu-tively to the sentence on the marijuana charge. It was further provided that if, after serving his sentence on the marijuana charge the petitioner's conduct had been good, the Court would consider a motion to suspend the remaining six-months sentence.

Petitioner's appeal to the Supreme Court of Virginia was denied and a petition for a rehearing in that Court was likewise de-nied. A timely petition for a writ of certio-rari to the United States Supreme Court was denied. On 21 March 1979, the peti-tioner filed with this Court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

At the Initial Pre-Trial Conference held 10 May 1979, the Court established a brief-ing schedule for the presentation to the Court of all legal issues, both parties being in agreement as to the relevant facts. The briefing schedule has been completed.

In a memorandum and order entered on 10 July 1979, the Court granted respon-dent's motion to dismiss with respect to several of petitioner's claims. Excepted from the purview of the order were those claims challenging the statutes as being vio-lative of petitioner's Ninth, Tenth, and Fourteenth Amendment rights. *Wolkind v. Selph*, 473 F.Supp. 675 (E.D.Va.1979). Upon motion of the petitioner filed 24 July 1979, the Court granted petitioner's request for reconsideration of the order entered on 10 July 1979. After additional briefing the matter is now ripe for final disposition.

In his amended petition as supported by his brief, the petitioner challenges his con-victions on several grounds: (1) that his Fourth Amendment right against unreason-

able searches and seizures was violated when police used a trained dog to sniff out contraband in the petitioner's possession when there existed no probable cause to believe petitioner was or had been engaged in illegal drug activities; (2) that petitioner's due process and equal protection rights were violated by the use and admission into evidence of an allegedly unreliable drug courier "profile"; (3) that both the sentence imposed and the statute authorizing such sentence violated petitioner's Eighth Amendment right against cruel and unusual punishment; (4) that the application of statutes under which he was convicted violated petitioner's rights guaranteed under the Ninth and Tenth Amendments; and (5) that the application of the statute further violated his rights to due process and equal protection under the Fourteenth Amendment.

## I

Insofar as the petition asserts a claim under the Fourth Amendment that the use of a trained drug dog by the police to sniff out contraband constituted an unreasonable search, the Court will reaffirm the opinion expressed in *Wolkind v. Selph*, 473 F.Supp. 675, 677–78 (E.D.Va.1979). The claim relating to the use of a drug courier profile as being violative of Fourteenth Amendment due process and equal protection provisions is similarly disposed of. Accordingly, on these grounds the petition must be DENIED.

## II

Insofar as the petition challenges the statutes authorizing the sentences imposed, Va.Code §§ 18.2–248, 18.2–250, and the sentences actually imposed as being violative of petitioner's Eighth Amendment rights against cruel and unusual punishment, the Court will incorporate its prior ruling as set forth in the memorandum and order of 10 July 1979. *Wolkind v. Selph*, 473 F.Supp. 675, 679–80 (E.D.Va.1979). *See also, National Organization for the Reform of Marijuana Laws (NORML) v. Bell*, 488 F.Supp. 123 (D.D.C.1980) [hereinafter cited as

*NORML v. Bell* ]. The petition must be DENIED on this ground, also.

## III

The petitioner further asserts:

That the potential [five to forty year] sentence for possession with intent to distribute marijuana violates the due process and equal protection provisions of the Fourteenth Amendment to the United States Constitution [and that] . . . the potential one-to-ten year sentence for simple possession of cocaine violates the due process and equal protection provisions of the Fourteenth Amendment to the United States Constitution.

Circuit Judge Tamm, writing for a three-judge district court in *NORML v. Bell, supra*, at 134, concisely summarized the equal protection analysis:

Legislation that does not affect a "fundamental" right or a "suspect" class need only bear a rational relationship to a legitimate state interest.

The distinctions drawn by a challenged statute must bear some rational relationship to a legitimate state end and will be set aside as violative of the Equal Protection Clause only if . . reasons totally unrelated to the pursuit of that goal. Legislators are presumed to have acted constitutionally even if source materials normally resorted to for ascertaining their grounds for action are otherwise silent, and their statutory classification will be set aside only if no grounds can be conceived to justify them.

*McDonald v. Board of Election Commissioners*, 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969). This standard of judicial review gives legislators wide discretion and permits them to attack problems in any rational manner. *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). "In an equal protection case of this type . . ., those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently

based could not unreasonably be conceived to be true by the governmental decisionmaker." *Vance v. Bradley*, 440 U.S. 93, 111, 99 S.Ct. 939, 950, 59 L.Ed.2d 171 (1979). The classification will be upheld unless the "varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [a court] can only conclude that the legislature's actions were irrational." *Id.* at 97, 99 S.Ct. at 943. "In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed on suspect lines . . . ." *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976).

■ Private possession of marijuana is not a fundamental constitutional right. *NORML v. Bell, supra*, at 133 and cases there cited. Likewise, the private possession of cocaine is not a fundamental constitutional right. *State v. Erickson*, 574 P.2d 1, 12 (Alaska 1978). *See also United States v. Solow*, 574 F.2d 1318, 1319–20 (5th Cir. 1978); *United States v. Marshall*, 532 F.2d

1279, 1287–88 (9th Cir. 1976). Accordingly, Virginia's statutory framework establishing criminal penalties for the possession with the intent to distribute marijuana, Va.Code § 18.2–248, and for the simple possession of cocaine, Va.Code § 18.2–250, need bear only a rational relationship to a legitimate interest of the Commonwealth.

### A.

■ The relevant section of the Code of Virginia at the time of petitioner's conviction of possession of marijuana with intent to distribute, § 18.2–248 (Supp.1977)[1] provided in pertinent part as follows:

Except as authorized in The Drug Control Act, Chapter 15.1 (§ 54–524.1 et seq.) of Title 54 of this Code, it shall be unlawful for any person to manufacture, sell, give or distribute a controlled substance.

(a) Any person who violates this section with respect to a controlled substance classified in Schedule I or II shall upon conviction be imprisoned for not less than five nor more than forty years and fined not more than twenty-five thousand dollars; any person upon a second or subsequent conviction of a violation of

1. Subsequent to petitioner's convictions § 18.2–248 was amended and the criminal penalties for the possession of marijuana with intent to distribute have been altered. § 18.2–248.1 of the Code of Virginia provides in pertinent part as follows:

Except as authorized in the Drug Control Act, chapter 15.1 (§ 54–524.1 et seq.) of Title 54 of this Code, it shall be unlawful for any person to sell, give, distribute or possess with intent to sell, give or distribute marijuana.

(a) Any person who violates this section with respect to:

(1) Not more than one-half ounce of marijuana is guilty of a Class 1 misdemeanor;

(2) More than one-half ounce but not more than five pounds of marijuana is guilty of a Class 5 felony;

(3) More than five pounds of marijuana is guilty of a felony punishable by imprisonment of not less than five nor more than thirty years.

Provided, that if such person prove that he gave, distributed or possessed with intent to give or distribute marijuana only as an accommodation to another individual and not with intent to profit thereby from any consideration received or expected nor to induce the recipient or intended recipient of the mar-

ijuana to use or become addicted to or dependent upon such marijuana, he shall be guilty of a Class 1 misdemeanor.

(b) Any person who gives, distributes or possesses marijuana as an accommodation and not with intent to profit thereby, to an inmate of a penal institution as defined in § 53–19.18, or in the custody an employee thereof shall be guilty of a Class 5 felony.

(c) Any person who manufactures marijuana, or possesses marijuana with the intent to manufacture such substance, not for his own use is guilty of a felony punishable by imprisonment of not less than five nor more than thirty years.

Va.Code § 18.2–248.1 (Supp.1979).

Nevertheless, the change in the law does not affect petitioner's statutory challenge inasmuch as the new provisions, § 18.2–248.1, establishes a criminal penalty for the possession of marijuana with the intent to distribute over five pounds with a virtually same penalty (5 to 30 years) as § 18.2–248 for Schedule I drugs in 1977 (5 to 40 years). As the petitioner was found in possession of approximately 19.6 pounds of marijuana, his equal protection challenge would not vary significantly under the present statute.

this section involving an opiate or synthetic opiate drug, may in the discretion of the court or jury imposing the sentence, be sentenced to confinement in the penitentiary for a term of life imprisonment or for any period not less than five years; provided, that if such person prove that he gave, distributed or possessed with intent to give or distribute a controlled substance classified in Schedule I or II other than marijuana only as an accommodation to another individual and not with intent to profit thereby nor to induce the recipient or intended recipient of the controlled substance to use or become addicted to or dependent upon such controlled substance, he shall be guilty of a Class 5 felony; and provided further, that if such person prove that he gave, distributed or possessed with intent to give or distribute marijuana only as an accommodation to another individual and not with intent to profit thereby nor to induce the recipient or intended recipient of the controlled substance to use or become addicted to or dependent upon such controlled substance, he shall be guilty of a Class 1 misdemeanor.

At the time of petitioner's conviction marijuana was a Schedule I drug. Va.Code § 54–524.84:4(d)(1) (Supp.1977). Petitioner challenges the inclusion of marijuana within Schedule I as arbitrary and irrational in light of the statutory criteria for Schedule I substances. Va.Code §§ 54–524.84:1–3 (Repl.Vol.1978).

The petitioner offers the reports of several research studies performed to analyze the effects of marijuana use. Essentially, the petitioner's authorities tend to emphasize the perceived benign effects of marijuana and the lack of serious consequence attendant to its use. Respondent's authorities identify negative or detrimental consequences flowing from the use of marijuana. This Court has no legislative power so it need not weigh the authorities cited by either side to the end that wise legislation be adopted. The court needs only to conclude that it is neither arbitrary nor irrational for the General Assembly of Virginia to seek to punish severely trade in marijuana.

Petitioner has not met his burden of proving the irrationality of the legislative scheme. The scientific and medical uncertainty concerning the effects of marijuana usage are clearly unresolved. The cultural and spiritual effects, also proper concerns of lawmakers, lie outside the scientific realm. This Court agrees with the observations of Circuit Judge Tamm in *NORML v. Bell, supra*:

Given the continuing debate over marijuana, this . . . [C]ourt must defer to the legislature's judgment on disputed factual issues. In the *Carolene Products* decision [*U. S. v. Carolene Products Co.*, 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938)] . . . the Supreme Court recognized the importance of this policy of judicial restraint:

[I]nquiries where the legislative judgment is drawn in question, must be restricted to the issue whether any state of facts either known or which could reasonably be assumed afford support for [declassification]. Here, the demurrer challenges the validity of the statute on its face and it is evident from all the considerations presented to Congress, and those of which we may take judicial notice, that the question is at least debatable . . . . As that decision was for Congress, neither the findings of a court arrived at by weighing the evidence nor the verdict of a jury can be substituted for it.

304 U.S. at 154, 58 S.Ct. at 784. The classification need not change continually as more information becomes available. [Legislative] . . . action must be upheld as long as a rational basis still exists for the classification. The continuing questions about marijuana and its effects make the classification rational.

Furthermore, judicial deference is appropriate when difficult social, political, and medical issues are involved. Courts should not step in when legislators make policy choices among conflicting alternatives. That this court might resolve the issues differently is immaterial. "When

Congress undertakes to act in areas fraught with medical and scientific uncertainties, legislative options must be especially broad and courts should be cautious not to rewrite legislation, even assuming, *arguendo*, that judges with more direct exposure to the problem might make wiser choices." *Marshall v. United States*, 414 U.S. 417, 427, 94 S.Ct. 700, 706, 38 L.Ed.2d 618 (1974).

*NORML v. Bell, supra*, at 136.[2]

■ Petitioner further challenges the classification of marijuana by the Virginia Code as overinclusive, in that marijuana is a benign drug with no objectionable characteristics, and as underinclusive, in that the statute does not likewise provide criminal penalties for the possession with the intent to distribute either tobacco or alcohol.

With regard to petitioner's overinclusiveness challenge, a brief review of the statutory framework for the scheduling of controlled substances is appropriate. Va.Code § 54–524.84:1 (Repl.Vol.1978) provides in pertinent part as follows:

(a) The Board shall administer this article and may add substances to or delete or reschedule all substances enumerated in the schedules in §§ 54–524.84:4, 54–524.84:6, 54–524.84:8, 54–524.84:10 or 54–524.84:12 pursuant to the procedures of chapter 1.1 (§ 9–6.1 et seq.) of Title 9 of this Code. In making a determination regarding a substance, the Board shall consider the following:

(1) The actual or relative potential for abuse;

(2) The scientific evidence of its pharmacological effect, if known;

(3) The state of current scientific knowledge regarding the substance;

(4) The history and current pattern of abuse;

(5) The scope, duration, and significance of abuse;

(6) The risk to the public health;

(7) The potential of the substance to produce psychic or physiological dependence liability; and

(8) Whether the substance is an immediate precursor of a substance already controlled under this article.

(b) After considering the factors enumerated in subsection (a) the Board shall make findings with respect thereto and issue a rule controlling the substance if it finds the substance has a potential for abuse.

(c) If the Board designates a substance as an immediate precursor, substances which are precursors of the controlled precursor shall not be subject to control solely because they are precursors of the controlled precursor.

(d) If any substance is designated, rescheduled, or deleted as a controlled substance under federal law and notice thereof is given to the Board, the Board may similarly control the substance under this chapter after the expiration of one hundred twenty days from publication in the Federal Register of final order designating a substance as a controlled substance or rescheduling or deleting a substance without following the provisions specified in subsections (a) and (b) of this section.

(e) Authority to control under this section does not extend to distilled spirits, wine, malt beverages, or tobacco as those terms are defined or used in Title 4 (§ 4–1 et seq.) of this Code.

(f) The Board shall exempt any non-narcotic substance from a schedule if such substance may, under the provisions of the federal Food, Drug and Cosmetic Act (21 U.S.C. 301 et seq.) or State law, be lawfully sold over the counter without a prescription (1972, c. 798; 1976, c. 614).

The State Board of Pharmacy is directed to place a controlled substance in Schedule I

---

2. *Accord United States v. Kiffer*, 477 F.2d 349, 355 (2nd Cir.) *cert. denied* 414 U.S. 831, 94 S.Ct. 62, 38 L.Ed.2d 65 (1973); *United States v. Rodriquez-Camacho*, 468 F.2d 1220, 1222 (9th Cir. 1972), *cert. denied*, 410 U.S. 985, 93 S.Ct. 1512, 36 L.Ed.2d 182 (1973); *Ravin v. State*, 537 P.2d 494, 512–13 (Alaska, 1975); *State v. Floyd*, 120 Ariz. 358, 586 P.2d 203, 205 (Ct.App. 1978); *Hamilton v. State*, 366 So.2d 8, 10–11 (Fla.1978); *People v. Schmidt*, 86 Mich.App. 574, 272 N.W.2d 732, 734–36 (1978); *State v. Mitchell*, 563 S.W.2d 18, 26 (Mo.1978).

on certain findings of the Board. Va.Code § 54–524.84:3 (Repl.Vol.1978). This section provides:

> The Board shall place a substance in Schedule I if it finds that the substance:
>
> (1) Has high potential for abuse; and
>
> (2) Has no accepted medical use in treatment in the United States or lacks accepted safety for use in treatment under medical supervision.

The Virginia statutory scheme is almost word-for-word identical to that contained in the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq. See* 21 U.S.C. § 811. This Section of the Controlled Substances Act has uniformly met the rational basis test under equal protection and due process scrutiny.[3] The Court joins with those courts having previously determined the rationality of the inclusion of marijuana within Schedule I and DENIES the petition on this ground.

Petitioner's underinclusive claim must be rejected also. *See NORML v. Bell, supra,* at 137. Circuit Judge Tamm's ruling is instructive in this regard:

> Legislatures have wide discretion in attacking the social ills. "A State may 'direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses, and it may do so nonetheless that the forbidden act does not differ in kind from those that are allowed'" *Hughes v. Superior Court,* 339 U.S. 460, 468, 70 S.Ct. 718, 723, 94 L.Ed. 985 (1950) (quoting *Central Lumber Co. v. South Dakota,* 226 U.S. 157, 160, 33 S.Ct. 66, 67, 57 L.Ed. 164 (1912). Failure to address a certain problem in an otherwise comprehensive legislative scheme is not fatal to the legislative plan.
>
> [A] legislature traditionally has been allowed to take reform "one step at a time, addressing itself to the phase of the problem which seems most acute to

the legislative mind," *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955); and a legislature need not run the risk of loosing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked.

*McDonald v. Board of Elections Commissioners,* 394 U.S. at 809, 89 S.Ct. at 1408.

> Given this policy of legislative freedom in confronting social problems, the exclusion of alcohol and tobacco from the [Controlled Substances Act] does not render the scheme unconstitutional. Different legislative schemes control the sale and distribution of alcohol and tobacco, *see e. g.* 26 U.S. §§ 5661(b), 5681, 5683, 5686 (1976). The specific exemption of alcohol and tobacco from the provisions of the [Controlled Substances Act], 21 U.S.C. § 802(6) (1976), reflect Congress's view that other regulatory schemes are more appropriate for alcohol and tobacco. That alcohol and tobacco may have adverse effects on health does not mean the [Controlled Substances Act] is the only proper means of regulating these drugs, nor does it mean that marijuana should be treated identically. . . . Congress, having the power to deal with drug abuse in any reasonable manner, decided to exclude alcohol and tobacco from the [Controlled Substances Act]. This court will not disturb that judgment.

*NORML v. Bell, supra,* at 138 (footnotes omitted). This Court agrees with Judge Tamm's analysis, and therefore, concludes that petitioner's assertion of underinclusiveness is without merit.

### B.

The petitioner further challenges the penalties established by the Virginia Code for the possession of marijuana with the intent to distribute as violative of the due process

**3.** *NORML v. Bell, supra,* at 134–142; *United States v. Kiffer, supra; United States v. Rodriquez-Camacho, supra;* Louisiana Affiliate of NORML v. Guste, 380 F.Supp. 404 (E.D.La. 1974), aff'd mem. 511 F.2d 1400 (5th Cir.), cert.

denied, 423 U.S. 867, 96 S.Ct. 129, 46 L.Ed.2d 96 (1975); *United States v. LaFroscia,* 354 F.Supp. 1338 (S.D.N.Y.), aff'd 485 F.2d 457 (2d Cir. 1973); *United States v. Maiden,* 355 F.Supp. 743 (D.Conn.1973).

and equal protection provisions of the Fourteenth Amendment. It is undeniable that opinions differ as to what punishment is appropriate for engaging in the business of selling marijuana. Some believe such trade is not or should not be a crime. Others think such a view irrational. Some believe the drug culture, of which the marijuana trade is a part, has gravely weakened this nation to the point that all our freedoms and liberties are imperiled. Others think such a view is irrational. With such conflicting views, surely the forum for resolution of the differences is the legislature. It appears that the Virginia General Assembly tends toward the latter view. And it may be right. Thus, the claims that the statutory punishment for possession of marijuana with the intent to distribute is irrational is rejected and the petition on this ground must be denied.

### C.

■ The petitioner next challenges the rationality of the classification of cocaine as a "narcotic drug" under Va.Code § 54–524.-2(17) (Supp.1977) and as a Schedule II drug under Va.Code § 54–524.84:6 (Supp.1977). Such a classification subjected him to a possible term of imprisonment of ten years under Va.Code § 18.2–250.

The petitioner proffers the expert testimony of Dr. Joel Fort, who argues that cocaine should be classified medically or pharmacologically as a stimulant rather than as a narcotic. Petitioner's authorities also tend to emphasize the benign effects of cocaine and the lack of serious consequences attendant to its use. The respondent has brought to the attention of the Court the case of *People v. Davis*, 92 Cal.App.3d 250, 154 Cal.Rptr. 817 (Ct.App.1979), involving a similar challenge to a similar statute. In *Davis* Dr. Fort rendered expert testimony for the appellants. The court noted:

Dr. Fort admitted that increased availability of cocaine could lead to increased abuse. He also admitted that overdoses can lead to death, although he stated very few deaths have occurred as the result of ordinary cocaine use. In addition, some

cocaine users suffer from formication— the sensation of bugs crawling under the skin. Psychosis can also occur and cocaine can be psychologically habituating. 154 Cal.Rptr. at 820.

Though the evidence and the authorities referred to the Court have been reviewed, the Court is not in the position to give an evaluation of the drug. The Court can only agree with the statement in *State v. Erickson*, 574 P.2d 1, 17, (Alaska 1978) (quoting *Ravin v. State*, 537 P.2d 494, 505 n. 44 (Alaska 1975)), that " '[i]t is not the function of this court to reassess the scientific evidence in the manner of the legislature' " and that " 'a holding that a legislative enactment is invalid cannot rest on a debatable medical issue.' " At best, the petitioner has presented a "debatable medical issue" with respect to the classification of cocaine as a "narcotic" and as a Schedule II drug under the Virginia statutes. Legislatures resolve debatable issues; courts resolve cases.

Petitioner further challenges the classification of cocaine by Va.Code § 54–524.2(17) as overinclusive in that cocaine is classified within the legislative scheme as a "narcotic drug." Va.Code § 54–524.2(17) provides in pertinent part as follows:

(17) "Narcotic drug" means any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:

.  .  .  .  .

(d) Cocoa leaves and any salt, compound, derivative, or preparation of cocoa leaves, and any salt, compound isomer, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but not including the decocainized cocoa leaves or extraction of cocoa leaves which do not contain cocaine or ecgonine.

Even if the Court assumes that within contemplation of pharmacology cocaine is not a narcotic, such assumption provides no

basis for the conclusion that the classification is overinclusive. In this regard, the Court finds persuasive the following passage from *People v. Davis, supra* :

> The legislative classification of cocaine for purposes of regulation and penology does not have to mirror its pharmacological status. Even if cocaine was separately classified as a nonnarcotic, its possession and sale could be prescribed and the punishment therefore could be exactly the same as the present law provides. The legislature has the power to prescribe and punish cocaine possession and sale in the same manner as heroin and other narcotics since cocaine is a similarly dangerous drug.

154 Cal.Rptr. at 822.

The Virginia statutory classification of cocaine as a narcotic is identical to that contained in the Controlled Substances Act, 21 U.S.C. § 802(16). This section of the Controlled Substances Act has uniformly met the rational basis test under equal protection and due process scrutiny.[4] Even though there is no legislative history by which to test the rationality of Va.Code § 54–524.2(17), in light of the similarities between the Virginia statute and the Controlled Substances Act, 21 U.S.C. § 802(16), the Court joins with those courts having previously considered the rationality of the classification of cocaine as a narcotic.

■ The petitioner further claims that the classification of cocaine as a narcotic and a Schedule II drug denies him equal protection of the laws insofar as it subjects petitioner to the increased penalties imposed upon the possession of Schedule II drugs. Va.Code § 18.2–250 provides that the possession of a Schedule II drug is a Class 5 felony. Va.Code § 18.2–10(e) provides that the punishment for conviction of a Class 5 felony is

> . . . a term of imprisonment of not less than one year or more than 10 years, or in the discretion of the jury or the court trying the case without a jury, confinement in jail for not more than 12 months and a fine of not more than $1,000, either or both.

Since the Court has determined that the classification of cocaine as a narcotic drug passes constitutional muster under the rational basis test, the Court concludes that the penalty imposed by the Virginia General Assembly upon the possession of cocaine as a Schedule II drug is not irrational, arbitrary, or unjust. Accordingly, the petition for a writ of habeas corpus must be DENIED on this ground.

The petitioner's due process claim can be disposed of as a result of what the Court has said with reference to the equal protection claim. The due process claim is based on the conclusion that the classification of cocaine as a narcotic is pharmocologically incorrect and must be invalidated for being irrational and without substantial basis in fact. As noted earlier, the Court does not believe that the General Assembly is limited to the pharmacological definition in its classification of cocaine. When the classification of cocaine as a Schedule II drug is viewed in the light of the overall legislative purpose of preventing the use of substances with a high potential for abuse, and which may lead to severe psychic or physical dependence, Va.Code § 54–524.84:5, the Court cannot say that the classification is irrational or arbitrary so as to violate due process. *See State v. Erickson, supra,* at 18. Thus, the petition must be DENIED on this ground.

4. *United States v. Solow,* 574 F.2d 1318, 1319–20 (5th Cir. 1978); *United States v. Wheaton,* 557 F.2d 275, 277 (1st Cir. 1977); *United States v. Lustig,* 555 F.2d 737, 750 (9th Cir. 1977), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 796 (1978); *United States v. Marshall,* 532 F.2d 1279, 1278–88 (9th Cir. 1976); *United States v. Harper,* 530 F.2d 828 (9th Cir.), *cert. denied* 429 U.S. 820, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976); *United States v. Foss,* 501 F.2d 522, 530 (1st Cir. 1974); *United States v. Smaldone,* 484 F.2d 311, 319–20 (10th Cir. 1973), *cert. denied* 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469 (1974); *United States v. Umentum,* 401 F.Supp. 746, 748 (E.D.Wis.1975), *aff'd,* 547 F.2d 987 (7th Cir. 1976), *cert. denied* 430 U.S. 983, 97 S.Ct. 1677, 52 L.Ed.2d 376 (1977); *United States v. Brookins,* 383 F.Supp. 1212, 1214–17 (D.N.J.1974), *aff'd* 524 F.2d 1404 (3d Cir. 1975).

**516**

## IV

■ As his final ground for a writ of habeas corpus, petitioner asserts that

The Ninth and Tenth Amendments to the United States Constitution prohibit the punishment of crimes without victims (such as that embodied in Va.Code §§ 18.2–248 and 18.2–250) as a violation of the right retained by the people to be free from criminal prosecution for possessing (regardless of one's intent) substances having a relatively harmless effect on the user, other persons, or society.

Circuit Judge Tamm noted in *NORML v. Bell, supra*, at 132, the right of privacy . . . exists only in conjunction with specific constitutional guarantees that serve as the substantive basis for the privacy right, *Paul v. Davis*, 424 U.S. 693, 712–13, 96 S.Ct. 1155, 1165–1166, 47 L.Ed.2d 405 (1976). The recognized substantive rights are 'fundamental' or 'implicit' in the concept of ordered liberty, *id.* at 713, 96 S.Ct. at 1166 (citations omitted), and [t]he activities detailed as being within this definition . . . relate to marriage, procreation, contraception, family relationships and child rearing, and education. *Id.*

Most courts considering similar privacy claims with regard to marijuana have concluded that there is no fundamental right to possess, ingest, or inhale marijuana.[5] While this Court believes that the right to be let alone by government is not necessarily dependent upon the existence of a fundamental right, it is clear that governments in this country have never considered the regulation of trade in substances subject to abuse as being beyond the appropriate reach of the law or as invading privacy. Indeed, we adopted an amendment to our Constitution making such a view of the permissible inva-

sion of privacy explicit.[6] The Court finds this historical precedent determinative with respect to the use and possession (regardless of one's intent) of both marijuana and cocaine.[7] Since there is no fundamental right to the private use, possession or trade in marijuana or cocaine, and since governments have the power to enact and enforce sumptuary laws in this area, the petition must be DENIED on this ground.

## V

Despite the ingenuity of petitioner's legal brief, the Court concludes that the classification of marijuana as a Schedule I drug is not violative of equal protection or due process; that the classification of cocaine as a narcotic and as a Schedule II drug does not deny to petitioner equal protection or due process; that the penalties established for the possession of marijuana with the intent to distribute, and for the possession of cocaine, are not violative of equal protection and due process; and that the criminalization of the possession of marijuana and cocaine does not constitute an invalid infringement on the right to privacy.

Whatever validity there may be in petitioner's argument, the wrong forum was chosen to advance it. The Courts are not and should not be legislatures of last resort. That way lies judicial tyranny.

---

**5.** *See e. g. NORML v. Bell, supra,* at 133; *Ravin v. State,* 537 P.2d 494, 502 (Alaska, 1975) (dictum); *State v. Kantner,* 53 Haw. 327, 493 P.2d 306 (1972); *Commonwealth v. Leis,* 243 N.E.2d 898 (Mass.1969).

**6.** Though the Eighteenth Amendment was later repealed, its constitutionality persists as does Prohibition in some States or sections of States.

**7.** *See also State v. Erickson, supra,* at 21–22 and *People v. Davis, supra,* 154 Cal.Rptr. at 823, rejecting claims that the right to privacy encompasses the right to use and possess cocaine, but for different reasons than those stated above.