**UNITED STATES of America, Appellee,**

v.

**Gregory Richard FOGARTY, Appellant.**

**No. 82–1323.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 16, 1982.

Decided Nov. 10, 1982.

Rehearing Denied Dec. 9, 1982.

Certiorari Denied March 21, 1983.

See 103 S.Ct. 1434.

Before BRIGHT, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Gregory Richard Fogarty was convicted at a bench trial on stipulated facts of one count of conspiracy to import marijuana in violation of 21 U.S.C. §§ 952(a) and 963 (1976), and one count of conspiracy to possess marijuana with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. Fogarty appeals his conviction, claiming (1) that the district court[1] should have granted his motion to dismiss the indictment under the Speedy Trial Act of 1974 and (2) that the classification of marijuana in the Federal Controlled Substances Act is arbitrary and capricious, violating the due process and equal protection mandates of the Fifth Amendment to the United States Constitution. We reject Fogarty's claims and affirm his conviction.

## I. Factual Background

A federal grand jury indictment was handed down on August 19, 1981, charging Fogarty and six others with conspiracy to import and distribute marijuana. The indictment, which was made public on October 23, 1981,[2] culminated a lengthy and complicated Federal Drug Enforcement Administration investigation beginning January 20, 1980, when a DC–7 aircraft containing 26,000 pounds of marijuana (with an estimated street value of approximately $18 million) landed in north central South Dakota and was seized by local law enforcement officers. The indictment named ten unindicted coconspirators and alleged forty-five overt acts occurring at various places in eight states and three foreign countries.

Fogarty was arraigned on September 8, 1981 and was joined for trial with four other indicted coconspirators (codefendants). Beginning in mid-October, 1981, Fogarty's codefendants filed numerous pre-

Marc G. Kurzman, Lisa A. Berg, Kurzman, Shapiro, Manahan & Partridge, Minneapolis, Minn., for appellant.

Philip N. Hogen, U.S. Atty., D. South Dakota, Sioux Falls, S.D., for appellee; Roger Damgaard, Legal Intern, on brief.

1. The Honorable Donald J. Porter, United States District Judge, District of South Dakota.

2. Because some of the defendants were at large, the indictment remained sealed until October 23, 1981.

trial motions. The district court issued an order on October 23, 1981 requiring all pretrial motions to be submitted by November 13, 1981, with the United States having until November 27, 1981 to respond and the defendants having an additional five days to file their replies. On November 2, 1981, the district court scheduled the defendants' trial for December 7, 1981.

Among the pretrial motions were the continuance motions filed by three of Fogarty's codefendants on October 15, 1981. While Fogarty did not join in these motions, he did file eight pretrial motions of his own on November 16, 1981, including a motion to sever his trial from the other defendants and a motion to dismiss the indictment for failure to comply with the Speedy Trial Act.

On November 24, 1981, the district court issued an order granting the three codefendants' motions to continue and moving the trial date from December 7, 1981 to January 6, 1982. On December 10, 1981, the court denied Fogarty's motions to dismiss and to sever and, accordingly, determined that Fogarty would be tried along with his four coconspirator/codefendants on January 6, 1982. The remaining pretrial motions were disposed of on December 22, 1981.

Before January 6, 1982, Fogarty's four codefendants pled guilty under plea bargaining agreements. Fogarty was tried pursuant to stipulated facts on January 6, 1982. His right to raise the issues in the instant appeal were expressly preserved at trial.

### II. Speedy Trial Act

Fogarty contends that his trial was not timely under the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161–3174 (1976) (Act), and, therefore, the district court should have dismissed the indictment against him.

Fogarty specifically urges that the 119-day delay between his arraignment on September 8, 1981 and the commencement of his trial on January 6, 1982 violated § 3161(c)(1) of the Act which provides:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

Thus, assuming that Fogarty's arraignment on September 8, 1981 started the seventy-day count, a timely trial would have begun on November 16, 1981, barring periods of excludable delay.

However, § 3161(h) of the Act sets forth a list of various periods of delay which are to be excluded when computing the elapsed time within which the trial must commence. Two of these "excludable time" provisions apply in this case to bring Fogarty's trial on January 6, 1982 within the seventy-day limit.

First, § 3161(h)(1)(F) (as amended 1979), provides in relevant part:

> (h) The following periods of delay shall be excluded in computing the time within which ... the trial of any such offense must commence:
>
> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—
>
> . . . .
>
> (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion.

In this case, the court was faced with numerous overlapping pretrial motions which were pending continuously from October 15, 1981, when the three codefendants' continuance motions were filed, until December 22, 1981, when the district court finally disposed of the remaining pretrial motions. Section 3161(h)(1)(F) clearly requires automatic exclusion of the sixty-one days during which such pretrial motions were continuously pending. *United States v. Brim,* 630 F.2d 1307, 1312–13 (8th Cir. 1980) *cert. denied,* 452 U.S. 966, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981).

■ A second "excludable time" provision of the Act applies here to the thirty-day delay resulting from the district court's continuance of the trial date from December 7, 1981 to January 6, 1982. Section 3161(h)(8)(A) empowers the judge to grant a continuance motion if he finds that the "ends of justice" so require. That section also provides that any delay resulting from such a continuance shall be excluded from the computation of trial days so long as the trial court "sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." Section 3161(h)(8)(B) accordingly provides, in relevant part:

> (B) The factors, among others, which a judge shall consider in determining whether to grant a continuance . . . are as follows:
>
> . . . .
>
> (ii) Whether the case is so unusual or so complex due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
>
> . . . .
>
> (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

In this case, the court clearly articulated on the record its reasons for continuing the defendants' trial date from December 7, 1981 to January 6, 1982. The court specifi-

cally noted the complexities of the instant case due to the existence of seven defendants, ten unindicted coconspirators, and forty-five alleged separate overt acts that took place over seven states and three foreign countries. The court also found that one of the codefendant's counsel had a significant trial conflict which necessitated a continuance to assure "continuity of counsel." We find these reasons valid and, therefore, agree with the district court's conclusion that "the ends of justice served by granting the motion for continuance . . . outweighed the best interests of the public and the individual defendants in a speedy trial." Accordingly, the thirty-one-day delay resulting from the continuance is excludable time under § 3161(h)(8)(A).

■ Finally, these exclusions of sixty-one days and thirty days apply to Fogarty despite his failure to join in the pretrial continuance motions and his unsuccessful attempt to sever. The Act specifically addresses the application of exclusions to multiple defendant cases such as this one. Section 3161(h)(7) provides that a court shall exclude:

> A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.

We agree with the D.C. Circuit's view that "[this provision] is crucial in a case involving multiple defendants because it provides that an exclusion applicable to one defendant applies to all codefendants." *United States v. Edwards*, 627 F.2d 460, 461 (D.C. Cir.), *cert. denied*, 449 U.S. 872, 101 S.Ct. 211, 66 L.Ed.2d 92 (1980); *accord*, *United States v. Manbeck*, 514 F.Supp. 152, 154–55 (D.D.C.1981). Applying this provision here, we note that: (1) Fogarty's severance motion was never granted and he was to be tried along with his coconspirator/codefendants; (2) the January 6, 1981 trial date was clearly timely as to Fogarty's codefendants who successfully sought continuances; (3) the district court properly determined that the delay resulting from the granting of the continuance motions was reasonable.

In view of the foregoing, the sixty-one days and thirty days of "excludable time" should be subtracted from the 112 days which elapsed between Fogarty's arraignment and his trial. Hence, Fogarty's trial on January 6, 1981 was well within the seventy-day limit.

## III. The Controlled Substances Act

Fogarty also contends that his conviction should be reversed because of the alleged unconstitutionality of the Federal Controlled Substances Act. 21 U.S.C. §§ 801–904 (1976) (CSA or Act). Specifically, Fogarty claims that the classification of marijuana as a Schedule I controlled substance,[3] *id.* at § 812(b), Schedule I(c)(10), is irrational and arbitrary, violating the due process and equal protection mandates of the Fifth Amendment to the United States Constitution. The gist of this claim is that the weight of current medical knowledge purportedly shows that marijuana does not satisfy the three statutory criteria necessary for inclusion in Schedule I—(A) high potential for abuse, (B) no currently accepted medical use, and (C) lack of accepted safety for use of the drug under medical supervision. 21 U.S.C. § 812(b)(1). Fogarty places particular emphasis on the number of currently accepted medical uses for marijuana, including therapeutic uses in the treatment of glaucoma and cancer.

In addressing this argument, we first note the highly deferential standard of review applicable here. Because there is no fundamental constitutional right to import, sell, or possess marijuana, the legislative classification complained of here must be upheld unless it bears no rational relationship to a legitimate government purpose. *United States v. Kiffer,* 477 F.2d 349, 352 (2nd Cir. 1972), *cert. denied,* 414 U.S. 831, 94 S.Ct. 165, 38 L.Ed.2d 65 (1973). Accordingly, "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines . . . ." *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976). Furthermore, judicial self-restraint is especially appropriate where as here the challenged classification entails legislative judgments on a whole host of controversial medical, scientific, and social issues. *Marshall v. United States,* 414 U.S. 417, 427, 94 S.Ct. 700, 706, 38 L.Ed.2d 618 (1974); *also see Kiffer,* 477 F.2d at 352. As noted in *Williamson v. Lee Optical, Inc.,* 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1954): "It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it."

With this in mind, we conclude that Fogarty has not met his heavy burden of proving the irrationality of the Schedule I classification of marijuana.[4] First, the

---

**3.** The severity of statutory sanctions for drug distribution and related offenses depends on the schedule in which the drug is classified, with the most severe penalties typically attaching to Schedule I substances and the least severe penalties attaching to Schedule IV and V substances. 21 U.S.C. § 841(b). Congress made the initial classifications of controlled substances. However, recognizing that scientific information concerning controlled substances could change, Congress empowered the Attorney General to hear petitions for the reclassification or removal of drugs from the schedules. *Id.* at § 811.

**4.** In so holding we are in accordance with the heretofore uniformly held view among federal courts that the Schedule I classification of marijuana is rational and, therefore, not violative of equal protection or due process. *See United States v. Kiffer,* 477 F.2d 349, 356–57 (2d Cir.

1972), *cert. denied,* 414 U.S. 831, 94 S.Ct. 165, 38 L.Ed.2d 65 (1973); *United States v. Erwin,* 602 F.2d 1183, 1185 (5th Cir. 1979) (Attorney General's failure to reclassify marijuana did not violate defendant's equal protection or due process rights); *United States v. Maiden,* 355 F.Supp. 743, 749 (D.Conn.1973); *Nat. Org. for Reform of Marijuana Laws v. Bell,* 488 F.Supp. 123, 140 (D.D.C.1980) (Three Judge Court); *Wolkind v. Selph,* 495 F.Supp. 507, 513 (D.Va. 1980), *aff'd,* 649 F.2d 865 (4th Cir. 1981) (Virginia's Controlled Substances Act, which classified marijuana as a Schedule I substance, complied with equal protection and due process mandates); *United States v. Creswell,* 515 F.Supp. 1268, 1271 (E.D.N.Y.1981) (DEA's decision not to reclassify marijuana was not arbitrary nor an abuse of discretion in view of the continued controversial effects of marijuana).

ongoing vigorous dispute as to the physical and psychological effects of marijuana, its potential for abuse, and whether it has any medical value, supports the rationality of the continued Schedule I classification. *See National Organization for Reform of Marijuana Laws v. Bell,* 488 F.Supp. 123, 128–30, 136, 139–40 (D.D.C.1980) (Three Judge Court) for Judge Tamm's excellent discussion of the current state of medical and scientific knowledge concerning the uses and effects of marijuana. Furthermore, the three statutory criteria for Schedule I classification set out in § 812(b)(1)—high potential for abuse, no medically accepted use, and no safe use even under medical supervision—should not be read as being either cumulative [5] or exclusive.[6] Thus, even assuming, arguendo, that marijuana has some currently accepted medical uses, the Schedule I classification may nevertheless be rational in view of countervailing factors such as the current pattern, scope, and significance of marijuana abuse and the risk it poses to public health. *See* 21 U.S.C. § 811(c)(1)–(8). Finally, it should be noted that under Section 811 Congress has provided a comprehensive reclassification scheme, authorizing the Attorney General to reclassify marijuana in view of new scientific evidence. In establishing this scheme, Congress provided an efficient and flexible means of assuring the continued rationality of the classification of controlled substances, such as marijuana. *See, Kiffer,* 477 F.2d at 357.

Judgment affirmed. Costs assessed against Appellant.

---

5. *See NORML v. Bell,* 488 F.Supp. 140; *Maiden,* 355 F.Supp. 748–49, n. 4.

6. *See* 21 U.S.C. 811(c)(1)–(8), *supra,* which lists eight factors the Attorney General must consider in classifying a drug. Such factors include the current pattern of abuse, the risk to public health, and the scope and significance of abuse.